STATE *vs.* ELMER SNOWMAN.

Franklin.    Opinion May 8, 1900.

*Fish and Game.   Guides.   License.   Constitutional Law.   Pleading.   Law and Fact.   Stat. 1897, c. 262.*

The fish in the waters of the state and the game in its forests are the property of the people in their collective, sovereign capacity, who may permit or prohibit the taking thereof.   When such taking is permitted, the legislature may impose such limitations, restrictions and regulations as it may deem necessary for the public welfare.

Chapter 262 of the statute of 1897 requiring the registration and certification of guides by the commissioners of inland fisheries and game, and imposing a penalty upon any person who engages in the business of guiding without such registration and certificate, is constitutional.

When the legislature may require a license for carrying on any business, or engaging in any vocation, it may exact the payment of a reasonable fee therefor.

An indictment charging the defendant with "having been unlawfully engaged in the business of guiding, in inland fishing and forest hunting, as the term is commonly understood, said defendant not having caused his name, age and residence to be recorded in a book kept for that purpose by the commissioners of inland fisheries and game of the State of Maine, and had not then and there procured from said commissioners a certificate setting forth in substance that he is deemed suitable to act as a guide either for inland fishing or forest hunting, against the peace, etc., "is not bad for duplicity."

The defendant was charged in an indictment with having been unlawfully engaged in the business of guiding.   *Held;* whether he was so engaged as a business is a question for the jury.   An instruction that "if he acts as guide one or more times, not being licensed, he falls within the provisions of the statute as being engaged in the business of guiding,—the statute intending to prohibit all guiding unless by licensed guides,"—is erroneous.

A single act of guiding with proof of other circumstances may justify the jury of such a charge; while, on the contrary, proof of two or more acts of guiding, with other circumstances proved, may fail to so satisfy them

ON MOTION AND EXCEPTIONS.

The defendant was indicted and found guilty of guiding at Rangeley without a license under c. 262 of the statute of 1897, and after verdict moved for an arrest of judgment upon the following grounds;—

(1)    The indictment is bad for duplicity; (2)    The indictment does not fully set forth the offense intended to be charged; (3) Everything set forth in the indictment may be true, and still the respondent may be innocent; (4)    The law is unconstitutional.

The defendant also took exceptions to certain instructions in the charge of the presiding justice which was reported in full in the bill of exceptions. These exceptions were to the closing part of the charge which appears below.

Charge to the jury.

"Now, Mr. Snowman is charged with pursuing since the first of July in this year the business of guiding upon Rangeley Lake and in that vicinity without having the license which this statute requires. It is admitted that he did not have a license, and the only question of fact, really, for you to determine is whether since the first day of July, his license for 1897 having expired the day before, he has been engaged in the business of guiding contrary to the provisions of the statute. If he has, why then he should be found guilty by you, and if he has not, then he is entitled to a verdict of acquittal.

"The business of guiding defined in the statute is as 'commonly understood.' You have heard the evidence. That question is partly one of law and partly of fact. I understand the term, 'engaged in the business of guiding as commonly understood,' to mean that the party undertakes, not necessarily in words but by acts, to act as a guide by the common sense of the term; that he makes a business of it, not necessarily all the time but it may be for a portion of the time, and he may have some other business for another portion of the time; and the test is not the volume of business he may do. A man may be engaged in the business of guiding although he may not actually discharge the duties of a guide but a few times in a season, and it may be that he may act as a mere servant for a party, hired to row a boat for a sportsman who knows the fishing-ground and does not care for any knowledge on the part of the guide, and he may be a mere boatman and not be in the business of guiding.

"It is a question of fact for you in which capacity this man

acted.   I say that it may be a man's business guiding, and yet he
may do but little guiding in a season.   It is conceivable that a
party might advertise himself, by postals if you please, or any way,
as a guide, and he might be employed two or three times early in
the season, and it is possible that he might remain at the lake the
whole of the fishing season and he might not be employed by any-
body, or by but a few, and yet it is possible that he may be
engaged in that business so far as he can get it to do.   So that the
volume of the business is not the test.   .   .   .   .

"Taking his past experience, the fact that he was licensed the
year before and applied for a license this year and what he did and
compare it with what other guides do, and perhaps you may have
some knowledge about that.   And then it is for you to say whether
he was then or sometime this year since the first of July engaged
in that business to a greater or less extent, and holding himself out
directly or indirectly by words, it may be, or simply by acts as a
guide and ready to be employed as a guide and to discharge the
offices and duties of a guide.   It is all a question of fact for you to
determine.   I say a man may let himself as a boatman and not as
a guide; he may let himself for a servant; he may do boating and
nothing else and not be engaged in the business of guiding.   Your
practical common sense will tell you the distinction.   .   .   .   .   .

"I am requested, gentlemen, to instruct you that it is incumbent
upon the State to show that Snowman has held himself out directly
or indirectly to the public as a guide, and that separate acts of guid-
ing for pay or otherwise are not necessarily proofs of Snowman
having been engaged in the business of guiding in violation of law.

"I give you that with a qualification.

"I have explained to you what is meant by holding himself out
directly or indirectly; that it need not be by words, but if he is
there by employment under circumstances which imply to the per-
son employing him, and who pays him, that he has a right to act
as a guide, and is employed as a guide, that would be an indirect
holding out.

"Now, I have said to you that the volume of business he may

do as guide is not the test, but the question is whether he has engaged in the business of guiding to a greater or less extent.

"And I think I will say to you for the purposes of this case, as it will undoubtedly go forward to the law court, that if he acts as guide one or more times, not being licensed, he falls within the provision of the statute as being engaged in the business of guiding. I think the statute intended to prohibit all guiding unless by licensed guides."

*E. E. Richards,* County Attorney, *L. T. Carleton,* with him, for State.

But one offense is embraced in the indictment, viz.: "engaging in the business of guiding." It may be committed by guiding in inland fishing or forest hunting, the two general branches of the occupation, without a license. The words "in inland fishing and forest hunting," following the word "guiding" in the eleventh line, can be considered simply as two independent causes set out as constituting one offense. *State* v. *Lang,* 63 Maine, 217; *State* v. *Robbins,* 66 Maine, 327; *State* v. *Woodward,* 25 Vt. 616.

The charge is engaging in the business of guiding. The words of the indictment deny the possession by the defendant of any certificate qualifying him to engage in either branch of that business, and is in effect a denial of his qualification to engage in both. *State* v. *Keen,* 34 Maine, 500; *Sherban* v. *Com.* 8 Watts, 212, (34 Am. Dec. 460.)

The enactment of the statute is clearly within the power of the legislature. *People* v. *Naglee,* 1 Cal. 232, (52 Am. Dec. 331); *Com.* v. *Ober,* 12 Cush. 493; *Hewitt* v. *Charier,* 16 Pick. 353; *Com.* v. *Crowell,* 156 Mass. 215; Cooley's Const. Lim. 4th Ed. 594-596; *State* v. *Montgomery,* 92 Maine, 433; *Morrill* v. *State,* 38 Wis. 428, (20 Am. Rep. 12); *State* v. *Express Co.,* 60 N. H., 219, (p. 260); *Geer* v. *State of Conn.,* 161 U. S., 519.

Exceptions: The charge should be construed as a whole, in the same connective way in which it was given.

If, when so given it presents the law fairly and correctly to the jury in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expres-

sions, if standing alone, might be regarded as erroneous. 2 Thompson on Trials, § 2407; *Searsmont* v. *Lincolnville*, 83 Maine, 75; *Adams* v. *Nantucket*, 11 Allen, 203; *Jackman* v. *Bowker*, 4 Met. 235.

*Enoch Foster and O. H. Hersey*, for defendant.

Business of guiding is entirely different, as a matter of law, from the act of guiding. To be engaged in the business of guiding, one act is not sufficient to constitute the offense. *Goodwin* v. *Clark*, 65 Maine, 284; *State* v. *Stanley*, 84 Maine, 561; *State* v. *Garing*, 74 Maine, 153, 154; *Com.* v. *Lambert*, 12 Allen, 178, 179; *State* v. *O'Connor*, 49 Maine, 597, 599.

Act unconstitutional: The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must be free in this country to all alike upon the same conditions. The right to pursue them, without let or hindrance, except that which is applied to all persons of the same age, sex and condition, is a distinguishing privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright. This act is made in the interest of the few against the rights of the great majority of the citizens of this state. It prohibits a citizen from using his faculties in a lawful way, and from living and working where he will, and earning his livelihood in a lawful calling, or in pursuing any lawful trade or vocation; and a regulation, or enactment, framed to exclude persons or classes from those pursuits that are given them by right and by nature, must be held void by the constitution. It bears no analogy to the police power which may rightfully be exercised in relation to law, medicine, or any of the learned professions, nor belongs to those callings which the state has the right to regulate or even prohibit in the protection of the health and morals of its citizens, or for the purpose of raising revenues.

The act is not in relation to the protection of fish and game. It is simply a prohibition against citizens of our state pursuing an ordinary, common calling in the community in which they reside.

Guiding is not a calling or profession that is dangerous in itself.
It is but an "ordinary calling" and requires no skill other than
what is possessed by persons residing in the community where they
may be located.   If the act is to be sustained at all, it must be sus-
tained on the ground that it falls within the police power of the
state either as affecting the health or morals of the people, or as
dangerous to the public.   How can it be said to fall within either
class?   This law was not enacted, nor does it purport so on its face,
for the purpose of protecting fish and game.   It was enacted as a
prohibition against an ordinary business, or calling of life.   It was
not enacted, for the purpose of obtaining. revenue, because the
amount to be paid for the license is merely nominal.   It is unlike
the cases where the state has a right to even prohibit as well as tax
for the purpose of not only obtaining revenue, but for the purpose
of prohibiting such business, where it would be injurious to the
health or the morals of the state.   Nobody can contend that the
business of guiding is contrary to the health or to the morals of
the people of the state.   No proposition is now more firmly settled
than that it is one of the fundamental rights and privileges of every
American citizen to adopt and follow such lawful pursuits not
injurious to the community, as he may see fit.   Cooley on Torts,
p. 277, and cases cited.

When the police power is attempted to be applied to such occu-
pations as guiding, and the state undertakes to prohibit them
altogether, or to regulate them by fines or licenses outside of what
may be proper as a means of revenue, it may be said that the
person so pursuing the calling or business is deprived of his liberty
without due process of law.

In respect to the great majority of employments, as ordinary
callings of life, and aside from skilled professions, the principles of
police power have no application.   They not only do not threaten
any evil to the public, but their prosecution to the fullest measure
of success is a public blessing.   They are callings which the
Almighty has given to mankind and which are protected by the
Constitution, which recognizes a man may have certain " natural,
inherent and inalienable rights, among which are those of enjoying

and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

The state may impose licenses in respect to any kinds of occupations for the purpose of defraying expenses of government. But these licenses are not, as a rule, within the police regulation for the purpose of prohibiting persons from entering into the practice of professions or callings. For, it is the right of every citizen to pursue the ordinary callings of life independently of government, and the pursuing of such callings can only be restrained and regulated by the state in the exercise of police power so far as may be required to prevent the doing of damage to the public, or in the conservation of public health and public morals. Where the calling or ordinary business of life is not dangerous to the public, and where it does not endanger public health or morals, it can be subject to no police regulation whatever, except that it falls within the power of taxation for the purpose of defraying the expenses of government.

The legislature has the choice of means to prevent evil to the public, but the means chosen must not go beyond the prevention of the evil, and prohibit what does not cause the evil. A regulation framed to exclude persons or classes must be held forbidden by constitutional provisions.

The prosecution of a particular calling which threatens damage to the public, either in regard to health or morals, is a legislative subject for police regulations, to the extent of preventing the evil. But this question is not one that lies wholly within the judgment or discretion of the legislative department. It is strictly a judicial question whether a trade or calling is of such a nature as to require or justify police regulation. The legislature cannot declare a certain employment to be injurious to the public good, and prohibit it, when, as a matter of fact, it is a harmless occupation. The general principle of constitutional liberty, liberty guaranteed by the bill of rights under our constitution, is that there must be no exclusion from lawful employments. Nevertheless, the law may make exceptions in some cases where the reasons therefor are sufficient on grounds of public policy, embracing cases falling within

the two principal grounds which police power rests on, viz:—conservation of public health and public morals.

The test of what is a reasonable regulation must be found in the legislative judgment, unless the bill of rights and the constitution have provisions which conflict upon the subject. What legislation ordains and the constitution does not prohibit will be lawful. But if the constitution does no more than provide that no person shall be deprived of life, liberty, or property, except by due process of law, it makes an important provision on this subject, because it is an important part of liberty to have the right to follow all lawful employments.

Under the mere guise of police regulations personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conclusive.

This police power, however broad and extensive, is not above the constitution. The unwritten law of this country is in the main against the exercise of police power, and the restrictions and burdens, imposed upon persons and private property by police regulations, are jealously watched and scrutinized. The main guaranty of private rights against unjust legislation is found in the bill of rights.

Whether the act is a valid exercise of legislative power is to be determined solely by reference to constitutional restraints and prohibitions. The legislative power has no other limitation.

Whenever an act of the legislature contravenes a constitutional provision, it is void, and it is the duty of the courts so to declare it, and refuse to enforce it.

Counsel cited: *People* v. *Otis*, 90 N. Y. 48; *Butchers Union Co.* v. *Crescent City Co.*, 111 U. S. 746; *Live Stock, etc., Assoc.* v. *Crescent City Co.*, 1 Abb. (U. S.) 398; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 515; Potter's Dwarris on Stat. 458; *Austin* v. *Murray*, 16 Pick. 121, 126; *Watertown* v. *Mayo*, 109 Mass. 315, 319; *Slaughter-House Cases*, 16 Wall. 36, 87; *Coe* v. *Schultz*, 47 Barb. 64; *Matter of Cheeseborough*, 78 N. Y. 232; *Corfield* v. *Coryell*, 4 Wash. (C. C.) 380; *Matter of Jacobs*, 98 N. Y. 98; *Beebe* v. *State*, 16 Ind. 501, (S. C. 63 Am. Dec. 391); Tiedeman, Lim. Police

Power; Cooley, Torts, 277; Smith, Wealth of Nations, Book 1, c. 10.

*Mr. Carleton,* in reply.

This law provides that whoever engages in the business of guiding shall cause his name, age, and residence to be recorded, and pay $1.00 license fee. The state thus derives a revenue of over $1700.00 annually from this source, which by law goes into the fund for the propagation of fish and the protection of game. It will be nearly $1900.00 this year,—a very substantial revenue, more by hundreds of dollars than was yearly appropriated when the state first commenced on this policy.

There are more than 1700 men living in this state and in New Hampshire and the provinces who are engaged in the business of guiding in Maine. They guided last year, according to their reports made to the Commissioners, and it is so published in their report, 63,501 days, and earned while so doing for this work nearly $350,000.00.

They guided 5820 residents of this state and 7366 residents of other states. These men are skilled in woodcraft, they know the haunts and habitat of fish and game, and how best to take it; and these skilled, trained hunters and fishermen are hired at high wages to show and aid their employers how to take the property of all the people, viz., their fish and game; and the state has said, through this guide law, to these men, if you engage in this business your name, age and postoffice address shall be known to the state authorities; you shall be registered and make a report of the extent of your business in this direction to the state authorities, so that the people of the state, who pay the taxes to provide this business for you, may the better understand the magnitude of this industry they are yearly called upon to pay their money to support by way of taxation.

There are vast interests in our wild lands, over which this vast number of people fish and hunt; our lumbermen, who own the timberlands, insist that they shall have that degree of protection against forest fires which a licensed guide can give if he will, and that no unsuitable person be allowed to guide strangers over their

property, who knows little or nothing of the fire danger, or the necessity of extinguishing camp fires.

Again, there is no so effectual method of protecting game as through this law, as will be readily seen. The guides can protect the game as it can be protected in no other way, and they can only be brought up to this by such a law as this registration law.

One of the chief objects of this law is the better protection of game.

SITTING: EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

FOGLER, J. The respondent was indicted and tried for an alleged violation of the provisions of Section 1 of Chapter 262, Public Laws of 1897, which reads as follows:

Sect. 1. "No person shall engage in the business of guiding, as the term is commonly understood, before he has caused his name, age, and residence to be recorded in a book kept for that purpose by the commissioners of inland fisheries and game, and procured a certificate from said commissioners, setting forth in substance that he is deemed suitable to act as a guide, either for inland fishing or forest hunting, or both, as the case may be. Whoever engages in the business of guiding without having complied with the provisions of this section forfeits fifty dollars and costs of prosecution."

Section 2 of the same chapter is as follows:—

Sect. 2. "Each registered guide shall from time to time, as often as requested by the commissioners, on blanks furnished him by the commissioners, forward a statement to them of the number of persons he has guided in inland fishing and forest hunting during the time called for in said statement, the number of days he has been employed as a guide, and such other useful information relative to the inland fish and game, forest fires and the preservation of the forests in the localities where he has guided, as the commissioners may deem of importance to the state."

Other sections of the chapter require that the registration provided for by the act, shall take place annually on or before the first day of July; that when any registered guide shall be convicted

of any violation of the inland fish and game laws he shall forfeit his certificate; that a fee of one dollar shall be paid by each person registered and that the money thus received shall be and become a part of the fund for the preservation of inland fish and game; and that the act shall not be construed to apply to any person who has not, directly or indirectly, held himself out to the public as a guide, or solicited employment as such.

The indictment alleges that the respondent, Elmer Snowman, at Rangeley in the county of Franklin, "On the second day of July in the year of our Lord one thousand eight hundred and ninety-eight and on divers other days between said second day of July, A. D. 1898, and the day of the finding of this indictment, was then and there engaged in the business of guiding in inland fishing and forest hunting, as the term is commonly understood, said Elmer Snowman not having caused his name, age and residence to be recorded in a book kept for that purpose by the commissioners of inland fisheries and game of the state of Maine, and had not then and there procured from said commissioners a certificate setting forth in substance that he is deemed suitable to act as a guide either for inland fishing or forest hunting, against the peace," etc.

The jury returned a verdict of guilty, whereupon the respondent filed a motion in arrest of judgment which was overruled by the presiding justice, and to such overruling of the motion the respondent excepts.

The respondent also excepts to an instruction given by the presiding justice to the jury.

The motion in arrest of judgment alleges that the indictment is bad for duplicity and is otherwise insufficient in law; and that the statute under which the respondent is indicted is unconstitutional.

We are of opinion that the indictment is sufficient in law. But one offense is charged, namely, that of having been unlawfully engaged in the business of guiding, and the indictment is not therefore, bad for duplicity. The indictment follows closely the language of the statute, so that the offense charged and the statute under which the indictment is found can be clearly identified and understood.

The counsel for the respondent contends that the statute under which the respondent is indicted is repugnant to that clause of the Declaration of Rights, Section 1, Article 1, of the Constitution of Maine, which declares that, "All men are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

It is argued in support of this contention, that the statute in question deprives the respondent and others from engaging in a lawful vocation, and is therefore in contravention of the provisions of the Bill of Rights, guaranteeing the liberty of all citizens.

It is unquestioned that every person has the natural right to pursue any lawful vocation, but such natural right is subject to the legal maxim, sic utere tuo ut alienum non laedas. So when a vocation, naturally lawful, or the mode of exercising it, inflicts injury to the rights of others, or is inconsistent with the public welfare, it may be regulated and restrained by the State by the exercise of its police power; by which persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the state. *Dexter* v. *Blackden*, 93 Maine, 473; Tiedeman's Lim. of Police Powers, § 1.

The question here is whether the enactment of the statute under consideration by the legislature was a legal and constitutional exercise of such power, or falls within constitutional limitation.

The rule to be observed by the judiciary in determining the constitutionality of a legislative enactment is thus stated in *State* v. *Lubee*, 93 Maine, 418: "Every presumption and intendment is in favor of the constitutionality of an act of the legislature. Courts are not justified in pronouncing a legislative enactment invalid unless satisfied beyond a reasonable doubt of its repugnance to the constitution; and nothing but a clear violation of the constitution —a clear usurpation of power prohibited—will warrant the judiciary in declaring an act of the legislature unconstitutional and void."

The manifest purpose of the statute in this case is the preserva-

tion of the fish in inland waters of the state, and the game in its forests. By the terms of the act a person, to be authorized to act as a guide in inland fisheries and forest hunting, must be registered and certified by the commissioners of inland fisheries and game, whose certificate must set forth in substance that the person to whom it is issued is suitable to act in such capacity. Each person so registered and certified, is required, as requested by the commissioners to furnish certain statistics as to his employment as guide, and also such other useful information relative to inland fish and game, forest fires and the preservation of the forests, as the commissioners may deem important to the state.

The fish in the waters of the state and the game in its forests belong to the people of the state in their sovereign capacity who, through their representatives, the legislature, have sole control thereof and may permit or prohibit their taking. *Martin* v. *Waddell*, 16 Pet. 410; *Geer* v. *State of Conn.*, 161 U. S. 519, and cases there cited; *Ex parte Maier*, 103 Cal. 476; *State* v. *Redman*, 58 Minn. 393.

In the case last cited the court says: "We take it to be the correct doctrine in this country that the ownership of wild animals, so far as they are capable of ownership, is in the state, not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common."

In *Ex parte Maier*, supra, it is said: "The wild game within a state belongs to the people in their collective sovereign capacity. It is not the subject of private ownership except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic and commerce in it, if it is deemed necessary for the protection or preservation of the public good."

When the state permits the taking of fish and game, it has full power and authority to regulate such taking. It may impose such conditions, restrictions and limitations as it deems needful or

proper. *Geer* v. *State of Conn.*, supra, in which Mr. Justice White, who delivered the opinion of the court, exhaustively examined and discussed the question here involved, citing an array of authorities, says, p. 528 : "In most of the states laws have been passed for the preservation and protection of game. We have been referred to no case where the power to so regulate has been questioned although the books contain cases involving controversies as to the meaning of some of the statutes." See also *Manchester* v. *Massachusetts*, 139 U. S. 240; *Roth* v. *State*, 51 Ohio St. 209; *Allen* v. *Wyckoff*, 48 N. J. L. 90; *Phelps* v. *Racy*, 60 N. Y. 10; *Moulton* v. *Libbey*, 37 Maine, 494; *State* v. *Whitten*, 90 Maine, 55.

It has been for many years the policy of this state to protect and preserve its fish and game, and to that end the legislature has annually appropriated and caused to be expended large sums of money, and has enacted numerous statutes. Under this wise policy the fish and game within its borders have become of great importance and value to the state. The statute here in question is a further enactment in pursuance of such policy.

It is well known that most sportsmen who frequent remote streams and lakes, and traverse the trackless forests which cover large portions of the state, do so under the guidance and direction of guides. Guides may be regarded as instrumentalities in fishing and hunting. Guides should possess such skill, experience, sagacity and probity that not only the safety of the sportsman but the welfare of the state can be properly intrusted to them. They should be under such restrictions that it shall be for their interest to discountenance violation of the fish and game laws. The legislature has deemed it wise to create such a body of men who shall pursue such vocation under the supervision of the commissioners of inland fisheries and game, and shall assist the commissioners in protecting and preserving the property of the state. The privilege of hunting and fishing is granted by the state freely and without price; and it is reasonable and proper that all who avail themselves of such privilege, whether they be fishermen, hunters or guides, should conform and be amenable to such regulations as the state may impose. We are of opinion that the legislature has the

constitutional power to regulate the employment of guides in fishing and hunting as provided in the statute here in question.

The learned counsel for the respondent further contends that, assuming the statute to be otherwise constitutional, the requirement that each person registered and certified under the provisions of the act, shall pay a fee of one dollar, is repugnant to the constitution, and that the statute is for that reason unconstitutional and void. We do not sustain that contention. It is well settled that when the state issues a license to any person to carry on any business or to engage in any vocation, it may exact a reasonable fee therefor. Tiedeman on Lim. of Police Powers, § 101, p. 274, et seq., where the authorities upon this point are collated and examined. The fee required by this statute is certainly reasonable, being no more than is sufficient to defray the expense of registering and certifying and maintaining necessary supervision.

We, therefore, hold that the statute under which the respondent is indicted is not repugnant to the constitution of the State, but is constitutional and valid.

The defendant excepts to the following instructions given to the jury by the presiding justice, viz: "And I think I will say to you, for the purposes of this case, as it will undoubtedly go forward to the law court, if he acts as guide one or more times, not being licensed, he falls within the provisions of the statute as being engaged in the business of guiding. I think the statute intended to prohibit all guiding unless by licensed guides."

This instruction was erroneous and the exception thereto must be sustained.

The respondent is charged in the indictment with having been unlawfully engaged in the business of guiding. Whether he was so engaged, as a business, was a question exclusively for the jury. A single act of guiding with proof of other circumstances might satisfy them of the truth of the charge; while, on the contrary, proof of two or more acts of guiding, with other circumstances proved, might fail to so satisfy them. Moreover, the statute, chapter 262, § 5, P. L. 1897, provides that, "This act shall not be construed to apply to any person who does not directly or indi-

rectly, hold himself out to the public as a guide or directly or indirectly solicit employment as such."

> *Exceptions as to sufficiency of indictment and as to constitutionality of statute overruled.*
>
> *Exceptions to instructions of presiding justice sustained. New trial granted.*