JOHN D. DUNCAN, APPL'T

*vs.*

WALTER F. ULMER, COMMISSIONER OF INSTITUTIONS AND/OR MENTAL HEALTH & CORRECTIONS

Knox.   Opinion, June 11, 1963.

*Louis Scolnik,*
*G. Curtis Webber,* for Plaintiff.

*John W. Benoit, Ass't Atty. Gen'l.,* for State.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ. WEBBER, J., did not sit.

MARDEN, J.  On appeal. By a petition under the Uniform Declaratory Judgments Act (Sections 38-50, Chapter 107, R. S., 1954) petitioner seeks to have the constitutional validity of Section 32-A of Chapter 27 of the Revised Statutes of 1954 (1961 Cum. Supp.)[1] (hereinafter termed

---

[1] "Sec. 32-A.  Transfer of prisoners to federal penal institution.— Any person committed to the state prison whose presence may be seriously detrimental to the well-being of the state prison or who willfully and persistently refuses to obey the rules and regulations or who is considered an incorrigible inmate may, upon written certification from the warden to the commissioner of institutional service, be transferred to a federal penal or correctional institution, provided the commissioner of institutional service approves and the attorney general of the United States accepts such application and transfer.

"The commissioner of institutional service is hereby authorized to contract with the attorney general of the United States or such officer as the congress may designate under the provisions of Title 18, section 5003 of the United States Code, and acts supplementary and amendatory thereof, in each individual case for the care, custody, subsistence, education, treatment and training of any prisoner transferred under the provisions of this section.  The contract shall provide for the reimbursement of the United States in full for all costs or other expenses involved, said costs and expenses to be paid from the appropriation for the operation of the state prison.  The warden shall affix to said contract a copy of the mittimus or mittimuses under which the prisoner is held and the same along with the contract of transfer shall be sufficient authority for the United States to hold said prisoner on behalf of the state of Maine.

"Any prisoner transferred under this section shall be subject to the terms of his original sentence or sentences as if he were serving the same within the confines of the Maine state prison.  Nothing herein contained shall deprive such prisoner of his rights to parole or his rights to legal process in the courts of this state."

U. S. C. A., Title 18, § 5003

"§ 5003.  Custody of State offenders.  (a)  The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: **Provided,** That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

"(b)  Funds received under such contract may be deposited in the Treasury to the credit of the appropriation or appropriations from which the payments for such service were originally made.

"Section 32-A") determined and if that Section be found invalid that the respondent be enjoined from continuing the confinement of the petitioner outside the State of Maine, and such other relief as law and justice requires.

The pleadings establish the following facts. On October 10, 1956 plaintiff was found guilty in the Superior Court at its October Term in Knox County of attempting to escape from the Maine State Prison and for that violation in due course was sentenced and committed to that institution to serve not less than 8 years and not more than 16 years.

On March 18, 1957 Allan L. Robbins, Warden of the Prison, purported, under Section 32-A to certify to N. U. Greenlaw, then Commissioner of the Department of Institutional Service,[2] that a transfer of plaintiff to a federal penal or correctional institution was in order, as a result of which the Commissioner, also under the provisions of Section 32-A, entered into a contract with the Director of the Bureau of Prisons (of the United States) whereby plaintiff was transferred on May 21, 1957 "by officers employed by the State of Maine" from the Maine State Prison to the United States Penitentiary at Atlanta, Georgia. On July 7, 1958 plaintiff was transported "by officers employed by the United States Department of Justice" to the United States Penitentiary at Alcatraz, California. By reference petition dated March 12, 1962 and seasonably filed with the Superior Court for Knox County, plaintiff attacked the validity of his transfer into federal custody, issue was joined

---

"(c)   Unless otherwise specifically provided in the contract, a person committed to the Attorney General hereunder shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentences imposed. Added May 9, 1952, c. 253, § 1, 66 Stat. 68."

---

[2] Now Walter F. Ulmer, respondent.

by pleadings on behalf of the State, upon motion dated March 30, 1962 addressed to the presiding justice of the Superior Court, leave was extended plaintiff to proceed *"in forma pauperis"* and to a decree entered by the Superior Court upholding the constitutionality of Section 32-A, the jurisdiction and sovereignty of the State of Maine, and denying plaintiff's petition, plaintiff appeals.

Counsel were appointed by this court to represent the plaintiff on his appeal. Plaintiff and his counsel filed independent briefs and the issues raised are here considered in composition.

The action of the State is challenged in the words of the petitioner upon the following grounds:

I.   Section 32-A, "is unconstitutional because it permits punitive action in the nature of transfer of place of confinement other than that designated by the commitment without first affording the prisoner a hearing as required by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 6 of the Constitution of Maine."

   A.   Transfer to a federal penitentiary substantially impairs the rights of a state prison inmate in the following respects:

      1.   Alienation from family and friends.

      2.   Impossibility of conferring with counsel.

      3.   Unavailability of legal materials.

      4.   Impairment of opportunity to obtain parole.

      5.   Application of more onerous rules regarding "good time".

      6.   Impairment of right to commutation and pardon.

      7.   Imposition of a "badge of infamy".

    B.   To afford hearing and notice to an inmate as a prerequisite to transfer to a federal prison would not substantially affect the rights of the state or the public.

    C.   Legislative omission of provisions for hearing and notice in Section 32-A unconstitutionally discriminates against appellant since such procedural safeguards are afforded to other prisoners similarly situated.

II.   Section 32-A, "is unconstitutional because it grants judicial power to an administrative officer in violation of Article VI, Section 1 of the Constitution of Maine."

III.   "That the contract drawn pursuant to * * * Section 32-A, * * * violates the appellant's rights under the Constitution of the United States and the State of Maine because of a clause in said contract not included in Section 32-A."

IV.   Section 32-A, "is unconstitutional as to the appellant by reason that it does not authorize the confinement of the appellant in (any) penal institution outside the jurisdiction and sovereignty of the State of Maine as defined in Chapter 1, Section 1, Revised Statutes of Maine; that such confinement outside the territorial jurisdiction of the State of Maine is in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States."

V.   Section 32-A, "does not by its terms authorize the transfer of the appellant from the Federal penal institution to which he was originally committed to another."

VI.   Section 32-A, "does not by its terms authorize that the appellant may be transported in the sole custody of Federal officers and/or State of

Maine officers outside the jurisdiction and sovereignty of the State of Maine as defined in Chapter 1, Section 1, Revised Statutes of Maine."

VII.   "The appellant's confinement to Alcatraz is in violation of Article I, Section 9, of the Constitution of Maine and the Eighth Amendment to the Constitution of the United States which prohibit cruel and unusual punishment."

VIII.   "That the certification required by * * * Section 32-A, * * * to the appellee from the Warden, Maine State Prison was not complied with, within the meaning of Section 32-A when upon request of the warden to appellee it was stated in the certification that it was not 'feasible, nor safe,' to keep appellant in the Maine State Prison."

When the record and briefs reached this court, plaintiff's point VIII was not supported by the record, inasmuch as the certificate to which he referred, was not embodied therein. A copy of the document appeared as an appendix to the plaintiff's personally prepared brief and under the authority of Rule 75 (h) M. R. C. P. this court, by stipulation of counsel, corrected the omission.

While it is the decision of this court that the plaintiff's immediate problem is solved by examination of a non-constitutional question, with a view of obviating later consideration we decide the constitutional questions raised.

At this point it is well to record a reminder that petitioner's process challenges Section 32-A in its abstract application; that by its terms it is offensive to the Constitutions of Maine and the United States.

The record limits us to the allegations which are admitted, — either expressly or by failure to deny, in the pleadings. Beyond that no evidence is recorded that Sec-

tion 32-A as applied to *him*, petitioner, has *resulted* in the prejudice which he represents to be inherent in the law. We are testing Section 32-A as a law.

The burden of proof is on the petitioner. 11 Am. Jur., Constitutional Law, § 132.

A legislative act is presumed to be constitutional and this presumption remains until its repugnancy clearly appears, or is made to appear beyond a reasonable doubt. *State* v. *Snowman*, 94 Me. 99, 110, 46 A. 815; *Laughlin* v. *City of Portland*, 111 Me. 486, 490, 90 A. 318; *State* v. *Lawrence*, 197 S. E. 586 (N. C. 1938), certiorari denied 305 U. S. 638, 59 S. Ct. 105.

## CONSTITUTIONAL QUESTIONS OF "DUE PROCESS" AND "EQUAL PROTECTION"

These questions raised in three of petitioner's eight points center, according to petitioner, upon the fourteenth amendment to the Constitution of the United States and Article 1, Section 6 of the Constitution of the State of Maine.[3] The reference section in the Maine constitution does not apply.

In considering the applicability of the "due process" clause of the fourteenth amendment to the federal constitution to the plaintiff's situation, we study it in the light of the following considerations.

Of the basic rights enumerated in the United States Constitution the one with which we are here dealing is the right to "liberty" unhandicapped except by "due process

---

[3] The federal constitution prohibits any State depriving any person of life, liberty or property without due process of law and from denying to any person within its jurisdiction the equal protection of the laws, and what the plaintiff contends is its counterpart in the constitution of Maine provides that "in all criminal prosecutions" the accused shall not be deprived "of his life, liberty, property or privileges but by judgment of his peers or the law of the land."

of law." It is extremely difficult, if not impossible, to formularize it.

> " * * * (U)nlike some legal rules (it) is not a technical conception with a fixed content unrelated to time, place and circumstances. * * * (I)t cannot be imprisoned within the * * * limits of any formula." *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 71 S. Ct. 624, 643. (Concurring opinion.)

Our fourteenth federal constitutional amendment although voiced nearly 100 years ago, governs and must be applied to contemporary problems; interpretations change with the passage of time. In 1871 it was declared that a convicted felon "has, as a consequence of his crime not only forfeited his liberty, but all of his personal rights except those which the law in its humanity accords to him." *Ruffin* v. *Commonwealth,* 62 Va. (21 Gratt.) 790, 796.

Today there is a growing recognition that "a prisoner retains all the rights of an ordinary citizen except those expressly, *or by necessary implication,* taken from him by law." (Emphasis added.) *Coffin* v. *Reichard,* 143 F. (2nd) 443, 445 (6th Cir. 1944). We honor this juristic approach.

The necessity on the one hand and the difficulty on the other of reconciling these conflicting factors has been recognized and expressed by a Federal Court which concluded that " (t)here must be some middle ground between these extremes." *U. S. ex rel. Yaris* v. *Shaughnessy,* 112 F. Supp. 143 (S. D. N. Y. 1953).

These two metaphysical poles are likewise fully recognized in text law where in speaking of liberty "it has been said to embrace every form and phase of individual right that is not necessarily taken away by some valid law *for the common good. * * * (I)t is deemed to embrace the right of men to be free in the enjoyment of * * * (his) faculties

\* \* \* subject only to such restraints as are necessary *for the common welfare."* (Emphasis added.) 11 Am. Jur., Constitutional Law, § 329, Pages 1134, 1135.

At the same time the law recognizes reality and the fact that those persons charged with the administration of a prison, wherein resides by commitment a segment of the State's population which has been unwilling or unable to meet its obligations to an orderly society, varying as individuals from the one-time offender to the sociopath, have a grave responsibility within and on behalf of the Executive branch of government (Chapter 27, §§ 1, 27, R. S., 1954). The management, control, and maintenance of the physical plant and its inmates and, hopefully, rehabilitation of the latter inherently require a supervisory atmosphere which, of necessity, withdraws from the prisoner many privileges and, in instances, authorizes the transfer of those inmates who do not adjust to its program. These withdrawals, these restrictions are "for the common welfare." These restraints, both the physical segregation of the convict from society and the discipline required within the prison, represent "due process" for society. Governmental "fair play" (*State* v. *Munsey,* 152 Me. 198, 201, 127 A. (2nd) 79) must be exercised for the benefit of all. This responsibility dictates reluctance on the part of courts to interfere with penal control and management. See Note, Constitutional Rights of Prisoners: The Developing Law, 110 U. Pa. L. Rev. 985 (May 1962). See also *McBride* v. *McCorkle,* 130 A. (2nd) 881, 885 (under notes 3-5) (N. J. 1957) and *Price* v. *Johnston,* 334 U. S. 266, 68 S. Ct. 1049, 1060 (headnotes 14, 15).

Searches by the courts to find and describe the "middle ground" mentioned in *Yaris* have not been infrequent and the constitutional issues which plaintiff raises have been judicially considered.

The administrative transfer of a prisoner from one institution to another within the State, without a hearing to determine the justification for such transfer, is neither a denial of due process (*Sheehan* v. *Superintendent of Concord Reformatory,* 150 N. E. 231, 233 (Col. 2) (Mass. 1926); *Uram* v. *Roach,* 37 P. (2nd) 793, 795 (Col. 1) (Wyo. 1934); *Ex parte Zienowicz,* 79 A. (2nd) 912, 917 (under headnotes 6, 7) (N. J. 1951); *Long* v. *Langois,* 170 A. (2nd) 618, 619 (Col. 2) (R. I. 1961); and *Duncan* v. *Madigan,* 278 F. (2nd) 695, 696 (9th Cir. Ct. App. 1960) certiorari denied 81 S. Ct. 1096, re-hearing denied 81 S. Ct. 1675)[4] nor failure to extend equal protection of the law (*People* v. *Scherbing,* 209 P. (2nd) 796, 799 (under headnotes 4, 5-7) (Dist. Court of Appeal Cal. 1949); *Bozzi* v. *Myers* 140 A. (2nd) 375, 376 (Pa. 1958); and *Duncan, supra*).

Intrastate administrative transfer of a prisoner is not a trespass on judicial power. *State ex rel Kelly* v. *Wolfer,* 138 N. W. 315, 317 (under headnote 4 p. 319) (Minn. 1912); *Sheehan, supra,* P. 233 (Col. 2); *Uram, supra,* p. 795 (Col. 2); *Mellot* v. *State,* 40 N. E. (2nd) 655, 657 (Ind. 1942); *Moffett* v. *Hudsbeth,* 198 P. (2nd) 153, 154 (Kan. 1948); *Scherbing, supra,* p. 799 (under headnotes 4, 5-7); *Ex parte Burns,* 202 P. (2nd) 433, 436 (under headnote 9) (Okla. 1949); *Zienowicz, supra,* p. 917 (under headnote 8); *Marsh* v. *Cavell,* 131 A. (2nd) 81, 82 (Pa. 1957); *The People ex rel Latimer* v. *Randolph,* 150 N. E. (2nd) 603, 605 (under headnotes 3-5) (Ill. 1958); and *Long, supra,* p. 619 (under headnote 2). See also *Green* v. *Robbins,* 158 Me. 9; 176 A. (2nd) 743.

---

[4] John D. Duncan convicted of a criminal offence in Maine and held at Alcatraz Federal Prison pursuant to a contract under U. S. C. A. Title 18, § 5003 and our Section 32-A, attacked § 5003 as unconstitutional.

Intrastate administrative transfer within the official discretion of one person is not constitutionally offensive. *Ex parte White,* 77 A. (2nd) 818 (N. J. County Ct. Law Div. 1950) ; *Zienowicz, supra; The People of the State of New York ex rel Sacconanno* v. *Shaw,* 164 N. Y. S. (2nd) 750 (S. Ct. App. Div. 1957) ; *Latimer, supra; Commonwealth ex rel Reed* v. *Maroney,* 168 A. (2nd) (Superior Ct. Pa. 1961) ; and *Long, supra.*

Additional courts, without discussion, have held that an intrastate administrative transfer poses no constitutional question. *Sheehan, supra,* p. 234; *Moffett, supra,* p. 154 (under headnote (1) ; *Ex parte White, supra,* p. 820; *Duncan, supra;* and *People* v. *Shaw, supra.* Generally see also 26 Am. Jur., Houses of Correction, § 7; 15 Am. Jur., Criminal Law, § 555; 41 Am. Jur., Prisons and Prisoners, § 6; 72 C. J. S., Prisons, § 19b. Page 876.

Some of the authorities cited above have made it a point in opinion that the statutory provisions in their states for administrative transfer were "as much a part of the sentence as if it (provision for transfer) had been extended at length on the record of the court." *Sheehan, supra,* p. 233 (Col. 2). To the same effect *Mellot, supra,* p. 657 (under headnote 3) ; *Zienowicz, supra,* p. 917 (under headnote 8) ; *Bossi, supra,* p. 376 (under headnote 3, 4) ; *Uram, supra,* p. 795; and *Kelly, supra,* p. 318 (Col. 2).

We are aware that the precedents cited deal with intrastate transfers, but the constitutional questions raised and decided are the same. It is our decision that the "due process" clause has not been violated.

Plaintiff urges that he has not been extended protection equal to other persons of the category in which he finds

himself, and bases this contention upon the fact that in Chapter 27 of the 1954 Revised Statutes Section 75 provides that for transfer from the Reformatory for Men to the State Prison a transfer board consisting of the Commissioner (of Institutional Service) the Warden of the State Prison and the Superintendent of the Augusta State Hospital must give unanimous approval. From the fact of a "board" plaintiff assumes that the prisoner has a right to be heard by that board before the transfer can be executed. The statute does not so provide. Under Section 32-A no transfer board is required. Plaintiff misunderstands the "equal protection" clause. All persons faced with an administrative transfer under Section 75 must be used alike. All persons transferred under Section 32-A must be used alike. Equal protection constitutionally does not mean that every person faced with an administrative transfer from any institution to any other must be processed alike. As between Section 32-A and Section 75 the category of persons involved is not the same. See *Skinner v. State of Oklahoma,* 62 S. Ct. 1110.

It is our decision that the plaintiff's constitutional right for "equal protection" has not been violated.

> It being our decision that Section 32-A violates neither the "due process" nor "equal protection" clauses of the Constitution we record no comment on petitioner's contention that affording notice and a hearing to an inmate pre-transfer under Section 32-A would not substantially affect the rights of the state or the public. If a prisoner were constitutionally entitled to a pre-transfer notice and a hearing the administrative inconvenience and expenses of such procedure would be immaterial.

While our finding that there has been no violation of plaintiff's rights under the fourteenth amendment to the

federal constitution disposes of the underlying legal basis of his petition we choose to point out that some of the phases of factual prejudice which he alleges may follow from transfer, expressed in the subparagraphs under I, *supra,* have been likewise considered judicially.

In addition to the comment in the cases already cited, it has been judicially determined that a convict is not entitled to a transfer whereby he might confer with attorneys or to be visited by relatives *People* v. *Hoffner,* 76 N. Y. S. (2nd) 915 (Queens County Ct. 1947) and by analogy we hold that being transferred away from family, friends, and legal counsel is violative of no constitutional rights.

There is complaint that such transfer impairs opportunity to obtain parole. Section 32-A specifically provides that such person shall not be deprived of his rights to parole and, even without that provision here protective to the prisoner, "no substantive rights of prisoner" would have been violated. *Stillwell* v. *Looney,* 207 F. (2nd) 359 (10th Cir. 1953) ; *Aderhold* v. *Lee,* 68 F. (2nd) 824 (5th Cir. 1934).

As to the complaint that the transfer results in "alienation from family and friends" it must be pointed out that plaintiff is speaking of a privilege and not a right. Visiting privileges extended an inmate of a State institution of necessity must be subordinated to the orderly administration of the institution, the presence of suitable facilities for visitation, co-operative conduct by the visitor and the visitee and other similar administrative consideration. Such visitation is entirely an administrative concession within the discretion of

the officer in charge, and no constitutional question is involved.

Transfer under Section 32-A impairs no right to commutation and pardon. Constitution of Maine, Article V, Part I, Section 11, and Section 32-A in Footnote 1.

It is urged that a transfer under Section 32-A to federal physical custody exposes the petitioner to more onerous rules regarding deduction of sentence for good behavior, commonly termed "good time." It is true that the application of the Maine and federal statutes extending time credit for good behavior of a prisoner serving an indeterminate sentence is not the same, the Maine statute crediting "good time" to the minimum term (§ 28, Chapter 27, R. S., 1961 Cum. Supp.) and the practice under the federal statute (U. S. C. A., Title 18, § 4161 formerly § 710) crediting "good time" to the maximum term (*Ware* v. *Hill*, 28 F. Supp. 346 (D. C. Pa. 1939)). We subscribe to the principle of the decision in *U. S. ex rel. Foley* v. *Ragen*, 52 F. Supp. 265, 280 which, applied to the present case, would suggest, and we hold, that any good time earned by the petitioner while in federal physical custody will, by Maine, be credited consistently with the Maine law, to the minimum term of his indeterminate sentence. This is not only proper but necessary under the provisions of Section 32-A whereby a prisoner shall be subject to the terms of his original sentence "as if he were serving the same within the confines of the Maine State Prison,"— not because entitlement to "good time" is a part of the sentence, for indeed it is not, but because the prisoner is being held on behalf of the State of

Maine and is entitled to good time under the Maine law as an incident to his legal custody by the State of Maine.

Petitioner's contention that the application of Section 32-A attaches a "badge of infamy" to the prisoner merits no legal consideration.

## CONTRACT WITH THE ATTORNEY GENERAL OF THE UNITED STATES

The Congress of the United States (U. S. C. A., Title 18, § 5003) and our Legislature (Section 32-A) have authorized the contract with which we are here concerned. There is a mutual interest and responsibility for the housing, treating, and rehabilitation of persons who have been found unwilling or incapable of meeting the demands of society. The federal government has established and maintains a variety of institutions to meet varying penal needs. It has been, and doubtless will be, impossible for each State to furnish comparable facilities. The availability of these institutions to the states is fully as beneficial as it is detrimental to those persons required to live in them. We cannot expect all of the inmates to admit to this view.

The validity of a contract between the Attorney General of the United States and the State to transfer federal prisoners to state physical custody as provided in U. S. C. A., Title 18, § 4002 was affirmed in *Rosenberg* v. *Carroll,* 99 F. Supp. 630 (D. C. N. Y. 1951) and the validity of a contract between the Attorney General of the United States and a State to accept transfer of a state prisoner into federal physical custody as provided by U. S. C. A., Title 18, § 5003 was affirmed in *Duncan, supra.*

The clause in the transfer contract of which petitioner complains is lifted from subparagraph (c) of reference § 5003. It may also be recorded that federal prisoners confined to a State Prison are subject to the same discipline

and treatment as those sentenced by the court of the State in which the Prison is located. *Rosenberg, supra.*

Whether the transfer exposes the prisoner to a more rigid custody than is incidental to service of sentence in the Maine State Prison is a question of fact, not law. The clause offensive to the petitioner does not violate his constitutional rights.

## JURISDICTION AND SOVEREIGNTY OF MAINE

It is urged that by virtue of Section 1, Chapter 1, R. S., 1954 and plaintiff's transfer to a place of confinement outside the State of Maine, that Maine has relinquished its sovereignty and lost jurisdiction of his person, as well as violated his constitutional rights. The constitutional aspect has been discussed. Section 32-A provides that by means of the contract, which we have discussed, with "a copy of the mittimus * * * under which the prisoner is held" is authority for the United States "to hold said prisoner on behalf of the State of Maine." The statute specifically retains Maine sovereignty.

The plaintiff is not involved in a problem of sovereignty, for by the statute appropriate officers of the United States Government (under U. S. C. A., *supra*) accept and hold the prisoner as agents of the State of Maine, at Maine's expense and subject to Maine's demand.

To petitioner's contention that the act of the respondent in causing him to be removed from within the territorial boundaries of the State of Maine resulted in the loss of Maine's jurisdiction over his person, we must reply that upon the record the question is moot. Section 32-A does not spell out the mechanics of the transfer and the record here discloses only that this transfer was accomplished "by officers employed by the State of Maine." The official identity of the officers is unknown to us. Section 32-A, by its terms, does not suggest the use of officers without legal power to accomplish the transfer.

To plaintiff's contention that the intent of the legislature in Section 32-A governs and that the legislature could not have intended a prisoner to be removed from within the territorial jurisdiction of Maine, it must be recorded that the United States Bureau of Prisons has never had a federal penal institution within such limits of the State of Maine and it is unlikely that the legislature contemplated Section 32-A to be invoked only in cases where state prisoners could be transferred to a federal institution within the said limits of the State.

## SUBSEQUENT TRANSFER FROM ATLANTA

In addition to constitutional questions raised and discussed, *supra,* petitioner also charges the respondent with the responsibility of his transfer from the United States Penitentiary at Atlanta, Georgia, to the United States Penitentiary at Alcatraz, California. Assuming, without accepting, such responsibility, it is sufficient here to say that the petitioner having been lawfully transferred under Section 32-A to federal physical custody and administration, the United States under U. S. C. A., Title 18, § 4082 (formerly § 753f) and clause 5 of the transfer contract has, and decisions have confirmed, the power of federal agencies to accomplish such transfer between federal institutions *Zerbst* v. *Kidwell,* 92 F. (2nd) 756 (Cir. Ct. App. Ga. 1937) (reversed on other grounds 304 U. S. 359, 58 S. Ct. 872) and between federal and state institutions *Chapman* v. *Scott,* 10 F. (2nd) 156, affirmed p. 690, certiorari denied 270 U. S. 657, 46 S. Ct. 354. And without notice to or consent of the subject, *Chapman, supra.*

## CRUEL AND UNUSUAL PUNISHMENT

Petitioner represents that transfer under Section 32-A is a violation of Article I, Section 9 of the Maine Constitution (and the eighth amendment of the United States Con-

stitution)[5] which prohibits the infliction of "cruel and unusual punishments." This category of discipline "implies something inhuman and barbarous or punishment unknown at common law," *In Re: Pinaire*, 46 F. Supp. 113 (D. C. Texas 1942); *Rosenberg, supra*, p. 632—which imprisonment authorized by statute and imposed within statutory limits is not. *Fraser* v. *Warden of Maryland Penitentiary*, 109 A. (2nd) 78. Transfer from one institution to another, perhaps of greater security or sterner discipline is not cruel and unusual punishment. *Zienowicz, supra*, p. 917 (under headnote 8), *Rosenberg, supra*, p. 633, *Stroud* v. *Johnson*, 139 F. (2nd) 171, 172 (under headnotes 3, 4) on which certiorari was denied 64 S. Ct. 846. Nor is sentence to imprisonment banishment, long since prohibited by our common law following the English Habeas Corpus Act of 1679.

## COMPLIANCE WITH SECTION 32-A

This section authorized transfer of a prisoner for one or more of three reasons (See Footnote Page 1), no one of which is expressed in terms of feasibility or safety. The "well being" of the prison is involved only when the presence of a prisoner is "seriously detrimental" to it, — the well being of the prison. The authority of the Commissioner of Institutional Service is both created and limited by this statute. The statute is to be strictly construed. The pertinent portion of the purported certificate[6] under

---

[5] See *Robinson* v. *California*, 370 U. S. 660, 666, 82 S. Ct. 1417 (1962) extending the eighth amendment to the states.

[6] " * * * I hereby certify that in my opinion and in the opinion of my staff, that it is not feasible, nor safe, to keep inmates * * * and John Duncan * * * confined in this institution and that for the well being of the Maine State Prison, I recommend that they be transferred to the custody of the U. S. Bureau of Prisons where they can be kept under close confinement. * * *."

which the Commissioner transferred petitioner does not comply with the terms of the statute.

Additionally the statute calls for "written certification from the Warden to the Commissioner" which means a document signed by the person whose responsibility it is to certify. *Chapman* v. *Inh. of Limerick*, 56 Me. 390, 393, *United States* v. *Naughten*, 195 F. Supp. 157. The certificate upon which this transfer was initiated is unsigned. It is invalid and the transfer by virtue of this certificate was error.

Upon consideration, therefore, it is ordered that the petitioner be forthwith returned to the State Prison at Thomaston, Maine, for further execution of his sentence.

*Appeal sustained as to point VIII only. Case remanded to the Superior Court for the entry of a declaratory judgment decree in accordance with this opinion.*