Keith PARKINSON

v.

STATE of Maine.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1988.
Decided Feb. 10, 1989.

John D. Pelletier (orally), Goodspeed & O'Donnell, Augusta, for appellant.

Charles K. Leadbetter, Wayne S. Moss, Garry L. Greene (orally), Asst. Attys. Gen., Augusta, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

In this post-conviction proceeding petitioner Keith Parkinson seeks judicial review of a denial by Maine prison authorities of extra work-related good time deductions pursuant to 17–A M.R.S.A. § 1253(4) (1983)[1] for the period he has been incarcerated at the maximum security federal prison in Marion, Illinois. The Superior Court (Penobscot County; *Alexander, J.*), in reviewing that denial of extra good time,[2] determined that Parkinson had established no basis for relief from the administrative action as to his Marion confinement and denied Parkinson's petition for relief. We affirm.

In 1977 Parkinson pleaded guilty to a 13–count indictment for kidnapping with the use of a firearm, robbery with the use of a firearm, and rape. He was sentenced to concurrent terms of 15 years on each count. He had committed those crimes after having escaped from the Maine State Prison, where he had been incarcerated for earlier offenses; he was later sentenced to an additional consecutive term of four years on the escape charge.

---

1. At the time Parkinson was sentenced, 17–A M.R.S.A. § 1253(4) (1983) provided:

    An additional 2 days a month may be deducted in the case of those who are assigned duties outside the institution or who are assigned to work within the institution which is deemed to be of sufficient importance and responsibility to warrant such deduction.

17–A M.R.S.A. § 1253(4) (Supp.1988) now provides for a possible deduction of three days per month for work-related good time.

2. The Superior Court did grant Parkinson partial relief as to his incarceration at federal facilities other than Marion, Illinois. That part of the Superior Court's judgment has not been challenged on appeal.

Although Parkinson was sentenced to the Maine State Prison, Maine prison officials in 1978 transferred him for disciplinary reasons to the federal prison system pursuant to 34 M.R.S.A. § 707 (1978), *recodified as amended,* 34–A M.R.S.A. § 3062 (1988).[3] Parkinson started out at the federal prison in Petersburg, Virginia, but was later transferred to the prison in Lompoc, California, and then to the prison in Leavenworth, Kansas. The successive transfers were for disciplinary reasons. Finally, in 1984 Parkinson was transferred, again for disciplinary reasons, to the federal prison in Marion, Illinois.

Although Parkinson worked intermittently at the first three federal prisons to which he was assigned, he has not worked at Marion. Parkinson nonetheless demanded of Maine prison authorities that they credit him with work-related good time for his time at Marion, but they refused to do so. Since that refusal to award work-related good time falls within the definition of a "post-sentencing proceeding" under the post-conviction review statute, 15 M.R.S.A. § 2121(2) (Supp.1988), Parkinson brought this post-conviction proceeding in the Superior Court seeking judicial review of the administrative decision to deny him the extra good time.[4] The Superior Court found no error in the prison authorities' denial of work-related good time for Parkinson's time at Marion.

Parkinson now appeals, arguing, as he did below, that Maine prison authorities were required to award him work-related good time even though he has not worked while imprisoned at Marion. The statute under which Parkinson was transferred, 34 M.R.S.A. § 707, provides that he "shall be subject to the terms of his original sentence or sentences as if he were serving the same within the confines of the State Prison." Parkinson claims the benefit of section 707, arguing that, if he had been confined at Maine State Prison rather than Marion, he would have been allowed work-related good time.

The single question before us on appeal requires us, as it did the Superior Court, to review the administrative action taken by the Maine prison authorities in denying Parkinson any work-related good time for his prison time at Marion. Because there was no evidentiary record made of the administrative action, the Superior Court took evidence of the factual circumstances on which the administrative agency made the determination to deny the extra good time. *Cf. Frank v. Assessors of Skowhegan,* 329 A.2d 167, 171 (Me.1974) (no administrative record in tax abatement case); *Lovely v. Zoning Bd. of Appeals of Presque Isle,* 259 A.2d 666, 668 (Me.1969) (no administrative record in zoning case). On this evidentiary record, the Superior Court found certain historical facts that it was entitled to assume formed the basis for the Maine prison authorities' determination that Parkinson should not be awarded good time. *See Frank v. Assessors of Skowhegan,* 329 A.2d at 171. The evidence received by the Superior Court "must relate to the limited issue of the reasonableness of the administrative decision." *Id.*

Therefore, in reviewing the administrative decision, the Superior Court had only a limited role. Its role was not to determine in the first instance whether Parkinson should have been awarded good time, but rather whether Parkinson, who has the burden of proof in this post-conviction proceeding, 2 Cluchey & Seitzinger, *Maine Criminal Practice* § 73.4, at 73–5 (1987),

---

**3.** 34 M.R.S.A. § 707 (1978) provided in part:

Any person committed to the State Prison whose presence may be seriously detrimental to the well-being of the State Prison or who willfully and persistently refuses to obey the rules and regulations or who is considered an incorrigible inmate may, upon written certification from the warden to the commissioner, be transferred to a federal penal or correctional institution, provided the commissioner approves and the Attorney General of the

United States accepts such application and transfer.

In its current form, the transfer statute provides for transfer of any prisoner, regardless of disciplinary history. 34–A M.R.S.A. § 3062 (1988).

**4.** Whether Parkinson could alternatively have sought judicial review of the administrative action by an appeal under the Administrative Procedure Act is a question we left open in *Clark v. Commissioner of Corrections,* 512 A.2d 327, 328 & n. 1 (Me.1986).

has established that the prison authorities acted unreasonably in denying him the extra work-related good time for his period of incarceration at Marion. We review the historical facts found by the Superior Court by a clearly erroneous standard. *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981). Parkinson, as the party with the burden of proof, can overturn those factual findings on appeal only if the evidence before the Superior Court compelled contrary findings. *See Luce Co. v. Hoefler*, 464 A.2d 213, 215 (Me.1983).

■ There is no dispute here that under section 707 Parkinson should receive, as near as may be, the same good time treatment while at Marion as he would receive under like disciplinary conditions at Maine State Prison. The only question before the Superior Court, and here on appeal, is a factual one: Did the Maine prison authorities have a reasonable factual basis to conclude that Parkinson would not receive any work-related good time if he were incarcerated at Maine State Prison under the same disciplinary conditions as prevail at Marion? On that question, the Superior Court's findings of historical fact are conclusive. Parkinson has failed to show, as he was required to do in order to prevail, that the evidence before the Superior Court compelled factual conclusions opposite to those reached by that court. He thus fails to carry his burden of demonstrating that the prison authorities acted unreasonably.

At the evidentiary hearing the Superior Court received evidence of Parkinson's disciplinary record and heard testimony from Harlan Sylvester, a then recently retired Maine prison official. On the basis of that evidence the Superior Court made the following findings of fact: (1) prisoners in the Maine prison system who are in disciplinary segregation do not earn work-related good time; (2) the federal prison at Marion is used within the federal prison system as "a disciplinary segregation facility for prisoners who are chronic disciplinary problems," and residence there "is akin to being placed in a disciplinary segregation section at another prison"; (3) Parkinson was transferred to Marion "to segregate him and to keep him under close supervision for disciplinary related reasons"; and (4) Parkinson's placement at Marion "is akin to his being placed in disciplinary segregation in a separate section of a facility if he was within the Maine corrections system."

These findings were amply supported by the record, and *a fortiori* the evidence did not compel contrary findings. The record shows that Parkinson was involved in numerous disciplinary actions before his transfer to Marion and that prison authorities at Leavenworth, where Parkinson was incarcerated just before the transfer to Marion, felt he needed tighter security. Furthermore, Sylvester testified that inmates are transferred to Marion because of serious disciplinary problems and that the entire prison at Marion is a specialized disciplinary segregation facility for the worst disciplinary offenders in the federal system. Thus, for the federal system with its greater number of prisoners than Maine, Marion serves much the same purpose as is served for the Maine State Prison by its disciplinary segregation unit. Sylvester testified extensively on the practice of not awarding work-related good time to Maine prisoners who are in disciplinary segregation. On these facts there was nothing arbitrary or unreasonable about the action of prison authorities in denying Parkinson work-related good time for the time he was in the federal disciplinary segregation facility located at Marion. They were giving him exactly the same treatment a Maine prisoner in disciplinary segregation would get, nothing less and nothing more. *See Duncan v. Ulmer*, 159 Me. 266, 280, 191 A.2d 617, 625 (1963).

■ We have previously noted our reluctance to interfere with penal control and management. *Duncan v. Ulmer*, 159 Me. at 275, 191 A.2d at 622. Furthermore, under 17–A M.R.S.A. § 1253(4), work-related good time is not an entitlement but is awarded only at the discretion of Maine prison officials. *Cf. Clark v. Commissioner of Corrections*, 512 A.2d 327, 329 (Me. 1986) (noting discretion of prison authorities in awarding good time under 17–A M.R.S.A. § 1253(5)). Section 1253(4) pro-

vides that two additional days of good time "may" be deducted from a prisoner's sentence for work "which is deemed to be of sufficient importance and responsibility to warrant such deduction." Here the prison authorities decided that Parkinson should not be awarded that extra good time. The historical facts found by the Superior Court demonstrate that they had a reasonable basis for that decision. We owe deference to the executive officials who are charged with administering the penal statutes and related administrative regulations; specifically, as related to the facts of this case, they know far better than any court what would be done if comparable circumstances arose in Maine. *See Kuvaja v. Bethel Savings Bank,* 495 A.2d 804, 806 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.