Everett CARLSON

v.

Richard S. OLIVER[1].

Supreme Judicial Court of Maine.

April 7, 1977.

1. During the pendency of this case the initial defendant, Garrell S. Mullaney, ceased to hold the position of warden of Maine State Prison. Richard S. Oliver became his successor and is presently warden of Maine State Prison.

Pine Tree Legal Assistance by Thomas B. Benjamin, Lewiston, for plaintiff.

William J. Kelleher, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATH-ERBEE,* POMEROY, WERNICK and AR-CHIBALD, JJ.

POMEROY, Justice.

This court has made clear that it is reluctant to interfere with penal control and management. *Duncan v. Ulmer*, 159 Me. 266, 191 A.2d 617 (1963). Nevertheless, we must recognize

"There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

At the time this action was commenced, appellant was a prisoner confined to the Maine State Prison as the result of his conviction of a felony. After disciplinary proceedings were conducted against him, he sought judicial review of such proceedings by means of an action commenced under M.R.Civ.P., Rule 80B. A justice of the Superior Court granted the State's motion to dismiss the complaint. Such dismissal was premised on the court's conclusion that the questions raised in the complaint were moot. This appeal resulted.

The State concedes that the determination that the cause was moot made by the Superior Court justice was error. Nevertheless, the State says, the Superior Court justice was correct in granting the motion to dismiss, though he did so for the wrong reason.

We agree and therefore deny the appeal.

Acting pursuant to Maine State Prison Rules and Regulations of the Bureau of Corrections of the State of Maine dated December 1, 1972 (hereafter Regulations), Carlson was charged with having committed two "offenses" as that term is described in the Regulations, § A(2). The two "offenses" were, in the language of the "Notice of Charge" which was served on Carlson:

(1) "While moving inmate Albert Wiseman to Segregation, inmate Carlson was calling me a nigger and a black bastard and told me to get my nigger hands off inmate Wiseman. Then while trying to move inmate Wiseman to Segregation inmate Carlson was shoving me and calling me names."

(2) "Carlson made threats to Officer Rodriquis while making a move, also Carlson reached for Rodriquis arm but grabbed mine and I quickly broke the hold. When I broke the hold I noticed Carlson grab Rodriquis and try to pull at him. Carlson was finally stopped by Officer L. Williams and other IAC members and did not interfere with the moving Officers again, but kept hollering to Officer Rodriquis and calling him a Nigger and such names saying he would get him."

After hearing, during which appellant was represented by counsel of his own choosing and by A. Heald, "Prisoner Advocate," the decision of the disciplinary panel was that

"[t]he Board finds subject guilty of assault based on the testimony of all witnesses. The board believes that his touching of officers Mahoney & Rodriquis crossed the line between merely getting their attention but entered the area of an intent to restrain the officers, however, weak his attempt. This in our minds, constitutes an intent to do violence."

In accordance with the Regulations, a summary of the findings was made and furnished to the warden for his review. In addition to the summary, the warden was presented with a tape recording of the hearing proceedings, to which he listened.

The decision that appellant was guilty of the "offenses" and the judgment entered on such finding by the three members of the board that

"[t]he following punishment was adjudged: · 10 day cell lock up on Case

---

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

# 1437. 10 days cell lock upon Case # 1438 to run consecutively. To be given credit for time already served in his cell since the incident and lock up"

was affirmed.

We must determine whether the Superior Court had subject matter jurisdiction of the allegations made in the 80B complaint. Rule 80B of the Maine Rules of Civil Procedure is not an independent grant of jurisdiction, but rather only provides the procedure to be followed if jurisdiction exists. Jurisdiction to review a governmental agency's action exists if it "is provided by statute or is otherwise available, by law . . . ." In the instant case, no review is provided for by statute. We must then look to see whether review is "otherwise available, by law."

Prior to the adoption of the Rules of Civil Procedure, it is apparent that the writ of certiorari was the appropriate vehicle to review the action of an agency performing a quasi-judicial function when that action was reviewable. *State Board of Educ. v. Coombs,* Me., 308 A.2d 582 (1973); *Inhabitants of the Town of North Berwick v. State Board of Educ.,* Me., 227 A.2d 462, 467 (1967); *Carter v. Wilkins,* 160 Me. 290, 293–94, 203 A.2d 682, 683 (1964). It is well accepted and has often been stated that Rule 80B acts in part as a replacement for the writ of certiorari as known at common law. *E.g., State Board of Educ. v. Coombs,* supra; Field, McKusick, Wroth, *Maine Civil Practice,* § 80B.1, at 308 (2nd ed. 1970). If a writ of certiorari would have been appropriate, then the Superior Court had appropriate subject matter jurisdiction under 80B.

An agency acts in a quasi-judicial capacity if it affects an interest which is constitutionally protected. *See Carter v. Wilkins,* supra.

In *State v. Tise,* Me., 283 A.2d 666 (1971), we recognized the inherent responsibility of prison administrators to impose reasonable disciplinary sanctions. The imposition of discipline was appropriately categorized as an administrative, not a judicial, sanction. *Id.* at 668. 1971 Me.Acts, c. 397, § 5 (repealed 1975, replaced by 34 M.R.S.A. § 531), the statute in effect at the relevant time, limited the warden's discretion as to the type of discipline which could be imposed. It did not create independent substantive rights.

Specifically in this case appellant received two ten-day periods of cell lock up, to run consecutively, as a punishment. He also alleges he was deprived of 20 days of good time credit.[2]

It is clear that the constitution does not create a right to either non-cell incarceration or good time credit. U.S. Const., Me. Const., *see Wolff v. McDonnell,* supra. Yet a prisoner may have certain interests that are capable of constitutional impairment. That 1971 Me.Acts, c. 397, § 5, listed confinement to a cell as a *punishment* suggests that a prisoner has a statutorily created expectation of non-cell confinement. 34 M.R.S.A. § 705 (1969) (amended 1975) allowing for the accumulation of good time, even though this accumulated good time may be withdrawn by the warden,[3] creates an expectation in the prisoner that he will be able to earn good time credit. That this conclusion is reasonable is pointed up by the fact that cell lock up and withdrawal of previously earned good time are *sanctions* reserved for offenses (defined by Regulations as major violations, Regulations § A).

It is clear that the prisoner's interest is legitimate., As such, these interests are entitled to procedural due process protection.

---

2. There is some ambiguity as to whether appellant actually lost 20 days of previously earned good time or only that during the 20 days of punitive cell lock up he was unable to earn the proportional number of good time credits. For the purpose of analysis, we will assume the former as it is the more significant deprivation.

3. In *Reed v. State,* Me., 295 A.2d 657 (1972), the opportunity to earn good time credit was discussed in another context. We recognized there that accumulated good time could be withdrawn by the warden in his discretion.

That the interest of the prisoner is created by the statute, not the constitution, does not alter the conclusion that such interest is entitled to constitutional protection.

"The touchstone of due process is protection of the individual against arbitrary action of the Government." *Wolff v. McDonnell,* supra, 418 U.S. at 558, 94 S.Ct. 2963, at 2976, 41 L.Ed.2d 935, citing *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

The liberty interest protected in *Wolff* was not constitutionally created. The interest had its roots in state law and the minimum procedures appropriate under the circumstances were there held required by the Due Process Clause "to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell,* supra 418 U.S. at 558, 94 S.Ct. at 2975.

It also matters not that the interest here claimed is labeled an "entitlement" or "expectation" as opposed to a "right" or "privilege."

"This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'" *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1971).

This has been the holding with respect to many "entitlements" not properly denominated "rights". *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (disqualification for unemployment compensation); *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (discharge from public employment); *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (denial of a tax exemption); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (withdrawal of welfare benefits); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer of prisoner).

An alleged interference with these interests is reviewable so as to insure that all the requirements of procedural due process have been met.

The Superior Court had jurisdiction over the subject matter of the 80B complaint which alleged constitutional infirmities.

Appellant, in his amended complaint, alleges he was denied due process. He does admit that he received advance written notice of the claimed violations; that a hearing was held at which he was allowed to call witnesses and had a right of confrontation; that he was represented by counsel; that he received a written summary of the committee's findings and decision; and that he was afforded an appeal to the warden of the Maine State Prison. We see no due process violations.

Appellant's allegation that the hearing was unfair is an ultimate conclusion and is not supported by any allegations of fact to justify such an ultimate conclusion.

We find it unnecessary to discuss appellant's claim that he did not receive a written summary. Suffice it to say that the appeal was taken immediately after the decision was rendered without waiting for the "copy of the summary."

We are satisfied that all the requirements of due process have been met. It is apparent that appellant's amended complaint was properly dismissed for failure to state a claim.

The entry must be:

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.