Steven **CLARK**

v.

**MAINE DEPARTMENT OF CORRECTIONS.**

Supreme Judicial Court of Maine.

Argued March 11, 1983.

Decided Aug. 4, 1983.

R. James Davidson (orally), Waldoboro, for plaintiff.

Gail Ogilvie, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before GODFREY, NICHOLS, CARTER,* VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

Plaintiff Steven Clark is an inmate at the Maine State Prison located in Thomaston, Maine. Prison disciplinary proceedings were brought against Clark pursuant to the Rules and Regulations of the Maine State Prison adopted January 15, 1981,[1] and he was found guilty of misusing state property in violation of Regulation A(j)[2] by the Prison Disciplinary Committee. Clark exercised his statutory right to appeal to the warden. *See* 34 M.R.S.A. § 531 (1978). The warden affirmed the decision of the Prison Disciplinary Committee and Clark sought judicial review of this proceeding pursuant to M.R.Civ.P. 80B[3] and the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8001–11008 (1979 & Supp.1982).[4] The Superior Court, Knox County, reversed the

---

* CARTER, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. 34 M.R.S.A. § 531 (1978) requires the Department of Corrections to develop disciplinary rules for institutions, such as the Maine State Prison, which are under its general administrative supervision and the statute also authorizes punishments for violations of those rules. As relevant to this case, section 531 provides:

    Punishments for violations of the rules of the institutions under the general administrative supervision of the Department of Corrections may be imposed in accordance with the procedures set forth in the rules and regulations governing such institutions. As to the Maine Correctional Center and the Maine State Prison, punishment may consist of warnings, loss of privileges, confinement to a cell and segregation or solitary confinement or a combination thereof and may include loss of earned good conduct time. In no event shall corporal punishment be imposed .... All punishments involving solitary confinement, segregation or loss of earned good time shall be first approved by the head of the institution.

    The department shall develop and describe in writing a fair and orderly procedure for processing disciplinary complaints against persons in any of the institutions under its general administrative supervision and shall establish rules, regulations and procedures to insure the maintenance of a high standard of fairness and equity. The rules shall describe offenses and the punishments for them that may be imposed. Any punishment that may affect the term of commitment, sentence and parole eligibility and any complaint, the disposition of which may include the imposition of segregation or solitary confinement of a person in such an institution, shall not be imposed without an impartial hearing at which the resident shall have the right to be present, to present evidence on his own behalf, to call one or more witnesses, which right shall not be unreasonably withheld or restricted, to question any witness who testifies at the hearing, which right shall not be unreasonably withheld or restricted and to be represented by counsel substitute as prescribed in the regulations. The person shall be informed in writing of the specific nature of his alleged misconduct and a record shall be maintained of all disciplinary complaints, hearings, proceedings and the disposition thereof. In all cases, the person charged shall have the right to appeal final disposition prior to imposition to the head of the institution and if at any stage of the proceedings the resident is cleared of the charges within a complaint or the complaint is withdrawn, all documentation to the complaint shall be expunged.

2. Regulation A(j) provides that the following is a violation: "Waste or misuse of state property."

3. As of February 15, 1983, this action would now be brought pursuant to M.R.Civ.P. 80C and the Maine Administrative Procedure Act.

4. In *Carlson v. Oliver,* 372 A.2d 226, 229 (Me. 1977), we acknowledged that Rule 80B of the Maine Rules of Civil Procedure does not provide an independent grant of jurisdiction to the Superior Court to review the action of governmental agencies. We held in *Carlson,* 372 A.2d 226, that, since judicial review of prison disciplinary proceedings was not provided for by statute, the Superior Court would have jurisdiction over a Rule 80B complaint to review such proceedings only when the complaint alleged interference with constitutionally protected interests. *Carlson,* however, was decided before the enactment of the Maine Administrative Procedures Act, 5 M.R.S.A. 8001–11008 (1979 & Supp.1982). The Administrative Procedures Act provides that "any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court" unless, as pertinent here, "judicial review is specifically precluded or the issues therein limited by statute." 5 M.R.S.A. § 11001(1) (Supp.1982). In the instant case, there is final agency action within the meaning of the statute, 5 M.R.S.A. § 8002(4) (1979).

final agency action on the grounds that: (1) Regulation A(j) was unduly vague as applied in the instant case in violation of 34 M.R.S.A. §§ 7,[5] 531 (1978); and (2) the inmate did not violate Regulation A(j) on the facts of this case. The defendant then appealed from that judgment, challenging both grounds. We affirm the judgment of the Superior Court.

## I.

During the fall of 1981, Steven Clark participated in a craft program at the prison and, in conjunction with that program, he was assigned a locker in the craft room. On the evening of November 12, 1981, a piece of hashish was found in his locker. The Prison Disciplinary Committee notified Clark on November 16, 1981, that he was being charged with possession of contraband in violation of Maine State Prison Rules and Regulations, Regulation B–1(b).[6]

A hearing was held on November 19, 1981, before the Prison Disciplinary Committee. The following facts were before the Committee: (1) hashish was found in Clark's locker on November 12, 1981, (2) Galen Campbell, another inmate, admittedly placed it in Clark's locker that evening because he did not want to get caught with it during a shakedown, and (3) Campbell, among others, had access to Clark's locker so that they could use his tools when he was not there. There was no evidence showing that Clark knew or should have known the hashish was in his locker. The Disciplinary Committee found Clark guilty as charged. It ruled that the hashish was found in his area and that he was guilty whether or not it was his. It imposed 10 days loss of recreation and 10 days loss of television as punishment.

Clark then appealed this decision to the warden, Paul Vestal, Jr. On November 24, 1981, the warden sustained his appeal and ordered further proceedings on a reduced charge of misusing state property (Regulation A(j)). The Prison Disciplinary Committee subsequently issued Clark a notice of charge on December 3, 1981, charging him with misuse of state property in violation of Regulation A(j). On December 11, 1981, before his hearing on this charge, a memorandum was circulated in the prison. As relevant here, the express purpose of the memorandum was "to inform those inmates that have been assigned locker space in the craft room that they will be held responsible for all contents of the assigned locker," even though they may have other inmates working with them.

Clark had a hearing on the reduced charge before the Prison Disciplinary Committee on December 15, 1981. The evidence at that hearing was essentially the same as that presented at his first hearing. The Disciplinary Committee once again found him guilty as charged and it imposed ten days loss of evening privileges as a punishment. It ruled that the person to whom a locker is assigned is responsible for all of the contents of that locker and that Clark misused state property when hashish was found in the locker assigned to him.

Clark once again appealed to the warden. This time the warden denied his appeal. He essentially ruled that Clark was strictly liable for the contents of the locker assigned to him based on the Maine State Prison Rules and Regulations issued in Jan-

---

Furthermore, there is no statutory provision specifically precluding judicial review or limiting the issues for review. Therefore, lacking statutory provisions excluding such review, we must conclude that the Superior Court had jurisdiction to review this case whether or not constitutionally protected interests were allegedly infringed.

**5.** 34 M.R.S.A. § 7 (Supp.1982) provides in part: "The central principle underlying all rules, regulations, procedures and practices relating to residents of the several institutions within the department . . . shall be that such persons shall retain all right of an ordinary citizen, except those expressly or by necessary implication taken from them by law."

**6.** Regulation B–1(b) provides that the following is a violation: "Possession of any substance which may be used to produce intoxication, stimulation or dizziness, unless such substance and the method of taking it is prescribed by a physician or dentist."

uary of 1981. He pointed out that the rules stated that inmates "are responsible for [their] immediate area and all articles found in that area." He interpreted this to refer to an inmate's cell and "any other area authorized for . . . [an inmate's] use by the institution." He thereupon concluded that Clark was guilty of misusing state property because hashish was found in his locker, even if it was not his or he did not know it was there. In making this ruling, the warden acknowledged that the memorandum dated December 11, 1981, "was to clarify any gray area concerning crafts room and [sic] lockers."

Clark appealed to the Superior Court. On July 30, 1982, the Superior Court sustained Clark's appeal and reversed the warden's decision. It primarily ruled that:

> [A]s a matter of law . . . the rules and regulations authorized by the Maine State Prison on January 15, 1981 would not adequately and fairly apprise Steven Clark as of November 12, 1981, that he would be strictly responsible for contraband found in the locker assigned to him in the Craft Room, which locker was used by at least six other inmates. The rules do not define what the misuse of State property consists of nor do they state what is meant by the statement that inmates are responsible for your immediate area and all articles found in that area. A locker space assigned in the fashion presented by this case, with numbers of inmates using the same at different times, cannot fairly be construed as being an immediate area without further clarification. The prison further attempted to clarify this in a memo dated December 11, 1981, but this was unfortunately after the fact.

It thereupon concluded that Regulation A(j) did not meet the standards required by 34 M.R.S.A. §§ 7, 531, as applied in the instant case. It alternatively ruled that, on the facts of this case, Clark did not violate Regulation A(j) as charged.

## II.

Plaintiff's complaint named only the Maine State Prison as the party defendant to this action in Superior Court. At oral argument, we raised the issue whether the Maine State Prison was a proper party defendant to an action brought pursuant to Rule 80B and the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8001–11008, seeking judicial review of prison disciplinary proceedings. Plaintiff claims that the Maine State Prison is the agency involved in such proceedings and, therefore, it is a proper party defendant. We disagree.

■ The Maine State Prison is neither an agency nor a legal entity which can sue or be sued. Accordingly, we conclude that it cannot be a party defendant to these proceedings. The agency involved in this action is the Maine Department of Corrections. The Department of Corrections is "responsible for the direction and general administrative supervision of the correctional programs within the Maine State Prison . . . ." 34 M.R.S.A. § 525 (1978 & Supp.1982). It is required by statute to develop rules, regulations and procedures for "processing disciplinary complaints against" inmates of the Maine State Prison. 34 M.R.S.A. § 531. "The rules [must] describe offenses and the punishments for them that may be imposed." *Id.* According to statute, punishments for violations of the rules can be imposed in accordance with the rules, regulations and procedures developed by the department. *Id.* Where application of those rules is called into question in a proceeding such as this, the Maine Department of Corrections is a proper party defendant to these proceedings. *See Sewall v. Spinney Creek Oyster Co., Inc.,* 421 A.2d 36, 38 (Me.1980).

■ In the past, where the plaintiff has failed to bring a proper party defendant before the Superior Court, we have held that the complaint must be dismissed. *See Inhabitants of the Town of Boothbay Harbor v. Russell,* 410 A.2d 554, 559 (Me.1980). In the instant case, however, the Assistant Attorney General appeared for the defend-

ant in Superior Court as required by statute. 5 M.R.S.A. § 191 (1979).[7] At oral argument before us, she represented that the defendant had been properly served. After oral argument, plaintiff filed a memorandum with this Court. That memorandum stated that the Assistant Attorney General stipulated that "the agency, all parties to the agency proceeding and the Attorney General" were served in accordance with the Maine Administrative Procedure Act, 5 M.R.S.A. § 11003 (1979). The defendant has not made any claim that it lacked notice and there is no question that the defendant has presented fully its defense to this action. Because this is a case involving the misnaming of the party defendant rather than joining the wrong party defendant, we do not think that dismissal of the complaint is required. Rather, we conclude that the title must be changed to correctly reflect the adversary parties involved in the case.

### III.

Defendant first argues that the Superior Court erroneously required that the prison rules and regulations precisely detail the prohibited conduct. We do not read the Superior Court's decision so broadly. Rather, it ruled only that the rules and regulations did not "fairly apprise" Clark that he would be strictly liable for the contents of his craft room locker and, therefore, he did not have reasonable notice that he would be in violation of Regulation A(j) prohibiting "misuse of state property" when another inmate stored contraband in his locker. However, in upholding the decision of the Superior Court on this ground, rather than basing our decision on both sections 7 and 531 of 34 M.R.S.A. as did the Superior

Court, we find it necessary to look only to the requirements of section 531.

Section 531 authorizes that inmates of the Maine State Prison may be punished for violations of the Maine State Prison Rules and Regulations adopted under the general authorization of the Department of Corrections in accordance with the procedures set forth in those rules and regulations.[8] The Department of Corrections is required to establish rules which "shall describe offenses and the punishments for them that may be imposed." 34 M.R.S.A. § 531. Although the statute does not address how explicit the rules must be, the statute requires the department to "establish rules, regulations and procedures to insure the maintenance of a high standard of fairness and equity." While we do not construe the statute to require the prison rules to specifically detail the offenses, we do construe the statute as requiring reasonable specificity, whenever possible, to give an inmate fair warning to conform. Such a requirement serves the underlying purpose of the statute in reducing the risk of arbitrary administration of prison rules and regulations.

■ Citing several provisions of the Maine State Prison Rules and Regulations in conjunction with Regulation A(j), defendant claims that the rules, read as a whole, adequately informed Clark as of November 12, 1981, that he would be guilty of misusing state property if someone else stored hashish in his locker, even though he did not know it was there. We, however, find only two of the provisions relevant to this case. The resolution of this issue boils down to whether Regulation A(j), when read in conjunction with a note in the rules that inmates are "responsible for ... [their] immediate area and all articles found

---

7. 5 M.R.S.A. § 191 (1979) provides in relevant part:

   The Attorney General, a deputy, assistant, or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of said officers

   are called in question, in all the courts of the State . . . .

8. "[P]unishment may consist of warnings, loss of privileges, confinement to a cell and segregation or solitary confinement or a combination thereof and may include loss of earned good conduct time." 34 M.R.S.A. § 531.

in that area," adequately notified Clark that he would be strictly liable for unauthorized items found in the locker assigned to him. We agree with plaintiff Clark and the Superior Court that the rules did not adequately inform Clark in the circumstances of this case.

While the prison rules and regulations would reasonably inform an inmate that he could be held strictly liable for unauthorized articles found in his cell, he would not reasonably expect his immediate area to encompass a locker he shared with several other inmates in the craft room. If the inmates were not allowed to share their lockers, then Clark could reasonably have understood that he would be ultimately responsible for unauthorized articles in his locker. However, that is not the case here. The memorandum issued December 11, 1981, makes clear that the prison officials allowed inmates who had been assigned lockers to have other inmates working with them. The purpose of this memorandum was not to establish a new policy of sharing, but to clarify that the inmate who had been assigned the locker had the ultimate responsibility for the contents of the locker.

We also think it is significant that prison officials saw the need to clarify the rules regarding who had ultimate responsibility for the craft room lockers. In his decision with respect to Clark, the warden expressly stated that the memorandum "was to clarify any gray area concerning crafts room and [sic] lockers." Clark, however, certainly could not be found guilty on the basis of that memorandum which was circulated about one month after the date of his alleged offense. Lacking such clarification as to the term "immediate area" prior to November 12, 1981, we must conclude that Clark was not fairly informed that the locker assigned to him in the crafts room was considered to be part of his "immediate area" and that he would be strictly responsible for unauthorized articles found in the craft room locker assigned to him in violation of Regulation A(J).

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.