STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-25

STEVEN R. SCHOFF, JR.,

Petitioner

v.

MAINE DEPARTMENT OF CORRECTIONS,
JOSEPH FITZPATRICK, COMMISSIONER,
SCOTT LANDRY, SUPERINTENDENT,
JANET MILLS, ATTORNEY GENERAL,

Respondents

ORDER  STATE OF MAINE
Cumberland ss. Clerk's Office

JUL 08 2015

RECEIVED

This matter is before the court on Petitioner Steven Schoff's Rule 80C Appeal of the

Maine Department of Corrections' ("DOC") Action made pursuant to 5 M.R.S. § 11001 et seq.

Schoff sought a stay pursuant to 5 M.R.S.A. § 11004, as well as a declaratory judgment. The

petition for a stay was denied. This court held a hearing on this matter.

I.    Factual and Procedural Background

As an initial matter, the DOC was responsible for filing the Record. With his petition for

review, and through a number of additional filings, Schoff has repeatedly added additional

materials for the Court to consider, including materials concerning time frames outside of those

pertinent to this case. Schoff has not submitted materials in compliance with M.R. Civ. P.

80C(f). Many of these materials are not pertinent to this specific case: for example, Schoff has

submitted many letters from other prisoners about their own experiences with the level system.

This court is not considering these additional materials. M.R. Civ. P. 80C(d).

On August 13, 2014, Schoff filed a Motion to Take Additional Evidence. The basis of his

Motion was the release of Policy Number 23.6, the Privilege Level System, from the DOC.

Schoff Asserted that he could not file his Rule 80(e) Motion within 10 days since he was not made aware of the policy until August 8, 2014. Since the level system policy's effective date was June 25, 2014, it makes sense that it was not filed as a part of the record, since it was not effective when Schoff was actually placed into the level system. The court thereby denies Schoff's Motion to Take Additional Evidence, as well as his Motion for Sanctions based upon the DOC's failure to include the policy in the Record.

Schoff is a prisoner at the Maine Correctional Center ("MCC"). The MCC has instituted a program that it has referred to as the level system and the behavioral management system, where prisoners are afforded a range of privileges and deprivations based upon their level. (R. 8-13.) Inmates whose incarceration pre-dates the level system, are placed in a grandfathered status where they are not a part of the level system, until they are involved in a serious incident, which results in placement in the level system. (R. 16.) Privileges, such as recreational time, gym, library, and phone use, commissary spending, visits, group involvement, jobs, and electronics, are most restricted at level one and become greater as prisoners move to levels two and three. (R. 13.)

On April 3, 2014, Schoff was placed on Emergency Observation Status Placement. (R. 1.) The reason given for his placement was that he "may pose a threat to the safety of others if in a less restrictive status", and the factual reason for his placement was:

> Schoff stated he was packed up and wanted to go to the Maine State Prison. he [sic] was advised he did not make the decisions. P/Schoff stated if he did not see Unit Manager Bailey by the evening of 4-4-14 there would be problems. P/Schoff was moved to C-Segregation and placed on EOS per Penny Bailey.

(R. 1.)

The Unit Manager, Penny Bailey, noted on April 4, 2014, "Placement appropriate. P/ Contintues to make threats of things that may happen if he is not transferred to MSP." (R. 1.)

2

The record reflects that Schoff was suffering from mental health symptoms. The Preliminary Individualized Plan from April 3, 2014 includes notes in the margin to an objectives list stating that Schoff was on a hunger strike, and indicating that his behavior was "very manic." (R. 3.) The Emergency Observation Status Review notes from April 7, 2014 state that Schoff was "making threats to harm others if not transferred to a more secure facility. In addition, while on EOS he misidentified himself to the nurse to get another prisoner's medication." (R. 5.) The Review also notes that Schoff "admits he needs medication for his MH disorder. Requests to be placed on treatment plan that includes medication compliance. He does not want to make these threats and wants help." (R. 5.) The Unit Management Team recommended placement on administrative segregation status, for the reason that "[p]risoner claims he is manic and paranoid about others disrespecting him. He is responding to these thoughts with threats. Prisoner needs to be evaluated by Psychiatry and stabilized." (R. 5. ) The Placement was approved by the Commissioner. (R. 5)

Strangely, on April 8, 2014, the Administrative Segregation Status Placement form was marked "No health care condition relevant to placement". (R. 6.) On the same date, however, the Prisoner Individualized Plan noted that there needed to be two officers to one prisoner "until medication compliant and stabilized", and under required actions/interventions "Meet with Mental Health" and "Be seen by Medical" were both selected. (R. 7.)

Subsequently, Schoff was placed at level one of the level system.[1]

The D.O.C. concedes that certain of Schoff's privileges were lost or curtailed: he was no longer allowed to visit the library; he lost his prison job; his gym time was eliminated; his recreation time was reduced; his telephone and visitation privileges were further restricted; his

---

[1] The court notes that the record is silent on Schoff's exact level system placement, but both parties appear to agree about Schoff's placement into the level system and resulting loss of privileges.

commissary spending limit was decreased; and he had limited opportunity to engage in vocational and educational programs. (*See* Resp.'s Brief 2; R. 13.)

On April 15, 2014, Schoff filed what he labeled a "Classification Appeal" noting that the behavior management program had been imposed upon him on April 14, 2014, and that the "program takes my paying job, visits, phone, recreation, canteen, out of cell time, and deprives me statutory good time." (R. 14.) He stated that "The disciplinary policy provides a means with which U.M. Bailey could discipline me, if such discipline were warranted . . . ," and asked that the "punitive imposition" of the B.M.P.U. be overturned. (R. 14.) This appeal was denied. (R. 14.) On April 28, 2014, Schoff submitted a prisoner appeal of a classification decision, based upon his interim reclassification review. (R. 15.) He noted that on April 25, 2014 the behavior management program had been imposed upon him, and that it was "a punitive measure that was imposed upon me without due process. I have had only one write-up (two years ago) in the past 8 years. This action is not warranted." (R. 15.)

On April 30, 2104, Commissioner Joseph Fitzpatrick wrote to Schoff.[2] (R. 16.) He stated that at the time the level system was put into effect a memo was released alerting prisoners of the new level system and of their grandfathered status pending involvement in any sort serious incident. (R. 16.) He informed Schoff that movement between the levels is considered a classification action. (R. 16.) While the Commissioner's letter failed to explicitly state as much, it functioned as denial of Schoff's request for review.

While the Record contains a four-page description of the level system, it is undated, and it is unclear who the description was sent to and when it was sent out. (R. 8-11) The Record also contains a memo from the unit manager to all prisoners on level changes in Unit I, which

---

[2] It is unclear to which appeal form from Schoff the Commissioner was responding.

4

describes Level 1, and is dated June 10, 2014. (R. 12.) The chart explaining levels 1-3 is also undated. (R. 13).

II.     Standard of Review

In its appellate capacity, the court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223.

The burden of proof is on a petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982).

The court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223. "A court will 'not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record.'" *Kroeger v. Dep't of Environmental Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566 (quoted in Alexander, *Maine Appellate Practice* § 452 at 312 (4th ed. 2013)); *see also* 5 M.R.S.A. § 11007(4)(c). The court may also "Remand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary . . . ." § 11007(4)(c)(B).

5

Where there have been multiple levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See* Alexander, *Maine Appellate Practice* § 455(b) at 315; *see also Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 17, 15 A.3d 1263.

III.   Discussion

The burden rests heavily on Schoff to show that the DOC's actions should be overturned. The Law Court has "noted [its] reluctance to interfere with penal control and management." *Parkinson v. State*, 558 A.2d 361, 363 (Me. 1989).

Schoff has raised a number of evolving arguments regarding the legality of the level system as applied to him, however, this court can only consider arguments that were preserved by Schoff at the administrative level. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988).

In this instance, Schoff contends that his placement in the level system was tantamount to a punitive sanction or punishment, and that while describing their measures as classification actions, the DOC took actions that are described as punishments under the statute. He therefore objects that the DOC never established the level system through rulemaking pursuant to 5 M.R.S. § 8052. Schoff contends that the DOC's placement of him in the level system violated his due process rights. Schoff argues that he has a statutorily created liberty interest in his prison industries job, as well as good time credits. Schoff also makes an Eighth Amendment claim.[3] Neither Schoff's rulemaking or Eighth Amendment claims can survive because they were unpreserved at the administrative level.

---

[3] Schoff's brief also includes the additional argument, never introduced before, that the DOC's actions were punishments for unspecified misconduct. Schoff also contends that the DOC's actions were not fair and equitable, which is related to his other claims.

6

The DOC contends that as the level system is a classification procedure the requirements for disciplinary procedure found in 34-A M.R.S.A. § 3032 are inapplicable; that placement in the level system does not implicate due process rights; that taking away Schoff's opportunity to earn good time credits does not trigger a right subject to due process protection; and that the DOC was not required to establish the level system as a formal rule under the APA. The DOC also contends that Schofff waived any objections to any procedural irregularities that can be alleged regarding his classification review by failing to raise them below.

A. The level system and rulemaking

A rule is defined in the Maine Administrative Procedures Act as:

the whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

5 M.R.S.A. § 8002(9)(A).[4]

Maine Law requires that "The commissioner shall adopt rules describing disciplinary offenses and punishments in facilities under the general administrative supervision of the department and establishing a fair and orderly procedure for processing disciplinary

---

[4] The term rule specifically excludes:

> **1)** Policies or memoranda concerning only the internal management of an agency or the State Government and not judicially enforceable;
> **2)** Advisory rulings issued under subchapter 3;
> **3)** Decisions issued in adjudicatory proceedings; or
> **4)** Any form, instruction or explanatory statement of policy that in itself is not judicially enforceable, and that is intended solely as advice to assist persons in determining, exercising or complying with their legal rights, duties or privileges.

A rule is not judicially enforceable unless it is adopted in a manner consistent with this chapter.

5 M.R.S. § 8002(9)(B).

7

complaints. " 34-A M.R.S.A. § 3032. The statute specifically requires that "The rules shall ensure the maintenance of a high standard of fairness and equity." § 3032(1).

The Corrections Statute provides a list of allowable of punishments: "Punishment at all correctional facilities, except juvenile correctional facilities, may consist of warnings, loss of privileges, restitution, monetary sanctions, labor at any lawful work, confinement to a cell, segregation or a combination of these." 34-A M.R.S.A. § 3032(5)(A).

Schoff's argues that the level system functions as a disciplinary action with punishments mirroring those found in 34-A M.R.S.A. § 3032(5)(A) and that thereby the Level System should have gone through the rulemaking process pursuant to 34-A M.R.S.A. § 3032, but he failed to raise this issue at the administrative level and thereby has waived it. *See New England Whitewater Ctr., Inc.*, 550 A.2d at 58.

> Generally, plaintiffs in a Rule 80C proceeding for review of final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal. Issues not raised at the administrative level are deemed unpreserved for appellate review. This rule applies even to unpreserved issues implicating constitutional questions.

*Id.* (citations omitted). It is thereby unnecessary to analyze whether the application of the level system was invalid in this action because of a lack of rulemaking, or whether, as the court finds more likely, the level system is a classification system that is entirely exempt from rule making as a policy "concerning only the internal management of an agency . . . and not judicially enforceable." 5 M.R.S. § 8002(9)(B). *See also Roderick v. State*, 2013 ME 34, ¶¶ 9-11, 79 A.3d 368 (finding that the DOC's policy regarding the allocation of good time credits did not have to be promulgated as a rule since it is not judicially enforceable). The court thereby disposes of Schoff's rulemaking objections to the level system.

B. Eighth Amendment claim

8

Schoff also did not raise his Eighth Amendment cruel and unusual punishment claim at the administrative level. U.S. Const. amend. VIII; *see also* Me. Const. art. I, § 9. While Schoff now claims that his placement in the level system was a result of his mental health symptoms, Schoff did not mention any issues related to his mental health in either of his appeals at the administrative level nor did he invoke the Eighth Amendment (R. 14-15.)

It is clear from the record that the incident in question and Schoff's subsequent placement in the level system arose from a mental health incident, Schoff, however, has not properly raised or preserved an Eighth Amendment claim. Nor, would Schoff be able to prevail on an Eighth Amendment claim, where he would have to show "the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and "deliberate indifference to inmate health or safety. . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (U.S. 1994) (quotations and citations omitted).

The court notes, however, that it is very concerned by the correlation between Schoff's mental health symptomology and his subsequent loss of privileges and enrollment in the level system. Schoff has cited to MDOC Policy Number 20.1, Prisoner Discipline, Procedure(C)(13), which applies to prisoners who have been found guilty in disciplinary hearings, and provides that for prisoners "who ha[ve] been identified as mentally ill or developmentally disabled, the disciplinary hearing officer shall consult with the appropriate mental health staff prior to determining the disposition." Schoff contends that no such consultation took place in his case, however, as no actual disciplinary hearing appears to have taken place in Schoff's case, the provision appears inapplicable, although it is instructive. Schoff's mental health symptoms should be addressed by mental health experts in his next classification hearing by the DOC.

C. Classification action versus punishment

9

Schoff has contended that the level system is a form of drastic punishment with severe sanctions. Schoff argues that the level system implicates the disciplinary action statute, § 3032. He contends that the level system imposes punishments akin to those divvied out through disciplinary procedures, and it fails to comply with Section 3032(1)'s requirement of fairness and equity.

The DOC, however, has maintained that the imposition of the level system was a classification procedure. The court agrees with the DOC that the level system is a classification policy. The court notes the DOC's citation to MDOC Policy Number 20.1, Prisoner Discipline, Procedure F, which provides:

> Conduct constituting a disciplinary violation may result in changing a prisoner's custody level, housing status, and/or programs, or the taking of any other action based on a determination that such action is in the interest of the prisoner, in the interest of the prison population, or in the interest of safety, security, or orderly management of the facility, regardless of whether the disciplinary process is initiated, and if initiated, regardless of whether the conduct leads to an informal resolution or formal resolution of the violation. A dismissal or a finding of not guilty does not preclude taking any such action. Such action is not in the nature of punishment.

Schoff notes the incredibly broad language of the Policy (*see* "taking of any other action"), however, the DOC quotes the policy to support its argument that just because re-classification can result in a deprivation of some previously held privileges, it does not necessarily equate to punishment, and therefore does not trigger the requirements of § 3032. Whether the level system, as applied in this instance, comports with due process is another matter, however.

D. Due process

The "Due Process Clause protects persons against deprivations of life, liberty or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from

10

the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." *Id.*

"The Supreme Court has recognized that 'as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not . . . subject an inmate's treatment . . . to judicial oversight.'" *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. N.J. 2002)(quoting *Asquith v. Dep't of Corrections*, 186 F.3d 407, 410 (3d Cir. 1999)). Schoff's placement in the level system would not implicate the Due Process clause of the Constitution.

"[P]risoners do not shed all constitutional rights at the prison gate, but . . . incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline . . . falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citations and quotations omitted)(alteration in the original.)

The Supreme Court has held that while the Constitution does not create "a liberty interest in avoiding transfer to more adverse conditions of confinement . . . ," state policies or regulations, subject to limitations enunciated in *Sandin*, can give rise to a liberty interest in avoiding certain types of confinement. *Wilkinson*, 545 U.S. 209, 221-222 (2005).

In *Sandin* the Supreme Court

recognize[d] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (transfer to mental hospital), and (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.[5]

---

[5] The bar for atypical and significant hardship is quite high under the Supreme Court's precedent. In *Sandin* the court concluded that the prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. . . .

11

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citations omitted).

The Supreme Court has decided that when making a determination concerning a prison action "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. 472, 484 (1995)).

The Supreme Court has applied a framework for analyzing what procedures are required when liberty interests are involved:

> The framework, established in *Mathews* v. *Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), requires consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Wilkinson*, 545 U.S. 209, 224-225 (2005) (quoting *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976)).

The Supreme Court has noted that notice of the factual grounds for action and an opportunity for rebuttal "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson*, 545 U.S. 209, 226 (2005).

---

Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." *Sandin*, 515 U.S. 472, 486 (1995). The court also noted, "Nor does [the prisoner's] situation present a case where the State's action will inevitably affect the duration of his sentence." *Id.* at 487.

"[T]he Law Court has explained that 'the essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard'." *Dechaine v. Dep't of Corr.*, 2005 WL 2727125, at \*3 (Me. Super. Apr. 25, 2005) (quoting *Martin v. Unemployment Ins. Comm'n,* 1998 ME 271, ¶ 15, 723 A.2d 412).

In this action, Schoff can show neither grounds for a Constitutional due process claim or a liberty interest claim based on the loss of certain privileges, such as his prison job. Schoff has not shown an "atypical or significant hardship." *See Abdul-Akbar v. Department of Corrections*, 910 F. Supp. 986, 1003 (D. Del. 1995) ("Given that prison rehabilitation and employment are discretionary opportunities that prison officials are not required to supply, plaintiff cannot argue that he has a "legitimate entitlement" to such opportunities or that the lack of such opportunities creates "an atypical and significant hardship.""); *see also Gilbert v. Pease*, 2011 U.S. Dist. LEXIS 101193, \*7 (D. Me. Sept. 7, 2011) ("removal of a prisoner from a . . . job is not a circumstance which gives rise to an interest protected by the due process clause. . . . If participation in a work release program . . . does not implicate a liberty interest . . . , it stands to reason that working . . . a . . . job does not implicate a property interest ...")

Schoff also cannot show a liberty interest in earning good time credits. "Although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit." *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. Conn. 2000)(citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). Schoff's good time credits were not taken away from him. He was only limited in his ability to accrue good time credits going forward. In *Parkinson v. State*, the

13

Law Court determined that work-related good time is discretionary and not an entitlement. 558 A.2d 361, 363 (Me. 1989). 17-A M.R.S. § 1253(8) provides, in pertinent part:

> For any person who commits a crime on or after October 1, 1995 and is subsequently sentenced to a term of imprisonment for that crime, up to 5 days per calendar month may be deducted from that term, . . . whose conduct, participation in programs and fulfillment of assigned responsibilities during that month are such that the deduction is determined to be warranted in the discretion of the chief administrative officer of the state facility or the sheriff of the county jail.

The language of the statute clearly imbues the chief administrative officer with complete discretion over the allotment of good time.

By contrast, Schoff has cited to, *Wilson v. Jones*, where the court found that a misconduct conviction infringed upon the prisoner's liberty interest "because it reduced his credit earning class in a manner that inevitably affected the duration of his sentence." 430 F.3d 1113, 1120 (10th Cir. Okla. 2005), *cert. denied*, 127 S. Ct. 158, 166 L. Ed. 2d 253 (2006) (quotation omitted). The court focused upon how the prison officials had no discretion over the effect of the conviction on the prisoner's classification, and how this lack of discretion leads to an inevitable effect on the sentence. *Id.* at 1121. The Iowa Supreme Court case *Sanford v. Manternach*, which Schoff also cited to is also distinguishable as that case was "grounded on [the prisoner's] right to a reduction in his sentence based on the good-conduct time that he has already earned, as opposed to a right to earn good-time credits in the first instance." 601 N.W.2d 360, 366 (Iowa 1999). Similarly, in *Teague v. Quarterman*, the 5th Circuit determined that "Texas' post-September 1, 1996 mandatory supervision scheme creates a constitutional expectancy of early release and, as such, a protected liberty interest in previously earned good-time credits." 482 F.3d 769, 777 (5th Cir. Tex. 2007)

In *Carlson v. Oliver*, which pre-dated *Sandin* by approximately two decades, the Law Court found that the statute created an expectation in the prisoner that he would have the ability to earn

14

good time credits, and thereby the court determined that the prisoner's interests should receive procedural due process protection. 372 A.2d 226, 229-230 (Me. 1977).

> 34 M.R.S.A. § 705 (1969) (amended 1975) allowing for the accumulation of good time, even though this accumulated good time may be withdrawn by the warden, creates an expectation in the prisoner that he will be able to earn good time credit. That this conclusion is reasonable is pointed up by the fact that cell lock up and withdrawal of **previously earned good time** are *sanctions* reserved for offenses (defined by Regulations as major violations, Regulations § A). It is clear that the prisoner's interest is legitimate. As such, these interests are entitled to procedural due process protection. That the interest of the prisoner is created by the statute, not the constitution, does not alter the conclusion that such interest is entitled to constitutional protection.

*Id.* (emphasis added). In the present case, however, looking to *Parkinson*, and the discretionary language of 17-A M.R.S. § 1253(8), it would appear that there is no prospective entitlement to good time credit.

DOC Policy requires that prisoners be given, in writing, at-least 48 hours notice prior to their reclassification review, MDOC Policy 23.1, Classification System, (D)(3), Furthermore, the Policy provides,

> At the time of a reclassification review, the Correctional Caseworker/Correctional Care and Treatment Worker shall verbally present the prisoner's individual case plan and progress toward completion. Unless the prisoner's behavior warrants denying the prisoner's presence or the prisoner declines to attend, the prisoner shall be present at the meeting and given the opportunity to make a statement and answer questions.

MDOC Policy 23.1, Classification System, (D)(6). The DOC states that Schoff has waived any arguments regarding alleged procedural irregularities in his classification by failing to raise them below. While Schoff may have not specifically referenced MDOC Policies 23.1(D)(3) and (6) in either his appeals below or his petition, he did mention that the behavior management program (level system) was imposed upon him without due process. His petition specifically mentions that he was not granted an opportunity to be heard and deprivation of his due process rights. This is sufficient.

15

The court notes, however, that Schoff has not suffered an "atypical and significant hardship" because of his placement into the level system. Thereby, Schoff does not have a liberty interest in not being placed into the level system that warrants procedural due process protection.

Accordingly, the court **ORDERS** that Schoff's Appeal and Request for a Declaratory Judgment are DENIED.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _July 8, 2015_

_____
Hon. Roland A. Cole
Justice, Superior Court

Petitioner-Steven R Schoff Jr Pro Se
Respondent-James Fortin AAG

16